Maria Diana Garcia
Blanca E. Rodriguez
Joachim Morrison
Amy L. Crewdson
Andrés E. Muñoz
Ashleen E. O'Brien
COLUMBIA LEGAL SERVICES
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARGARITO FIERRO CORDERO, FERNANDO MENDEZ FRANCO, JOSE RODRIGUEZ LLERENAS, SANDRO VARGAS LEYVA, OCTAVIO GOMEZ GARCIA, VICTOR PADILLA PLASCENCIA, ALEJANDRO CHAVEZ MONROY, JOSE MENDOZA ANGUIANO, FERNANDO MARTINEZ PEREZ,  JUAN LOPEZ GUTIERREZ, OMAR PALMA RENTERIA, JOSE GALLEGOS GONZALEZ, FRANCISCO MUÑOZ MEDRANO, and HECTOR BAUTISTA SALINAS<br><br>Plaintiffs,<br><br>vs.<br><br>STEMILT AG SERVICES, LLC,<br><br>Defendant. | **JURY DEMANDED**<br><br>No.<br><br>COMPLAINT FOR DAMAGES |

COMPLAINT FOR DAMAGES - 1

## PRELIMINARY STATEMENT

1.      Plaintiffs are class members of a related class action lawsuit, *Gomez v. Stemilt*, No. 2:20-cv-00254-SMJ, who now file these individual lawsuits for claims not certified in the related action. Should any of the individual claims in this lawsuit be later certified as class claims in the related action, Plaintiffs will pursue those claims in the related action.

2.      This is an alienage discrimination case in the terms and conditions of employment, in violation of 42 U.S.C. § 1981.

3.      Plaintiffs Palma Renteria, Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas—2017 H-2A workers housed and employed outside the Pasco area—also bring a forced labor action. These four Plaintiffs allege that Stemilt violated federal anti-trafficking laws by threatening to terminate, send back to Mexico, and blacklist them from future employment in the United States if they did not meet unlawful daily production standards. This practice caused Plaintiffs to believe they would suffer serious economic harm unless they submitted to Stemilt's labor demands.

4.      In addition, Plaintiffs assert two state law claims. First, all Plainitffs except for Plaintiff Martinez Perez, allege Stemilt violated state wage laws when it failed to pay Plaintiffs for wait times, both before and after work, when Stemilt transported them to other Stemilt orchards. Stemilt managers required Plaintiffs to

COMPLAINT FOR DAMAGES - 2

wait, uncompensated, both before entering the fields and after a full day's work.

Second, Stemilt made misleading disclosures to all Plaintiffs contrary to the

Washington Farm Labor Contractors Act, as well as other violations of that statute.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 (Federal Question).

6.      This Court has jurisdiction over this action pursuant to 42 U.S.C. §

1981 (Alienage Discrimination).

7.      This Court has jurisdiction over this action pursuant to 18 U.S.C.

§ 1595(a) (Trafficking Victims Protection Act).

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C.

§ 1367 (Supplemental Jurisdiction).

9.      The proper venue for this action is in the Eastern District of

Washington pursuant to 28 U.S.C. § 1391.

## PARTIES

10.      Plaintiff Margarito Fierro Cordero permanently resides in the state of

Chihuahua, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A

worker in 2017.

COMPLAINT FOR DAMAGES - 3

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

11.     Plaintiff Fernando Mendez Franco permanently resides in the state of Michoacan, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

12.     Plaintiff Jose Rodriguez Llerenas permanently resides in the state of Colima, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

13.     Plaintiff Sandro Vargas Leyva permanently resides in the state of Colima, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

14.     Plaintiff Octavio Gomez Garcia permanently resides in the state of Jalisco, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

15.     Plaintiff Victor Padilla Plascencia permanently resides in the state of Colima, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

16.     Plaintiff Alejandro Chavez Monroy permanently resides in the state of Jalisco, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

COMPLAINT FOR DAMAGES - 4

17.    Plaintiff Jose Mendoza permanently resides in the state of Michoacan, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

18.    Plaintiff Fernando Martinez Perez permanently resides in the state of Jalisco, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

19.    Plaintiff Juan Lopez Gutierrez permanently resides in Colima, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

20.    Plaintiff Omar Palma Renteria permanently resides in the state of Chihuahua, Mexico, and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

21.    Plaintiff Jose Gallegos Gonzalez permanently resides in the state of Jalisco, Mexico and was was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

22.    Plaintiff Francisco Muñoz Medrano permanently resides in the state of Jalisco, Mexico and was was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

23.    Plaintiff Hector Bautista Salinas permanently resides in Mexico and was employed by Stemilt Ag Services, LLC as an H-2A worker in 2017.

COMPLAINT FOR DAMAGES - 5

24.     Defendant Stemilt Ag Services, LLC is a Washington corporation with its principal place of business in Wenatchee, Washington located in Chelan County.

## STATEMENT OF FACTS

**Background**

25.     Plaintiffs are Mexican nationals who worked for Stemilt as H-2A farm workers during 2017.

26.     Stemilt is a wholly-owned subsidiary of Stemilt Growers, a large tree fruit company in Wenatchee.

27.     Stemilt applied for and obtained a license from the Washington State Department of Labor and Industries to operate as a farm labor contractor in 2017.

28.     Stemilt manages more than 8,000 acres of company-owned and leased orchards.

29.     Stemilt is one of the largest agricultural employers in the United States.

30.     H-2A workers are particularly vulnerable and often subject to work conditions and requirements that local workers—who have the freedom to vote with their feet and find different employment—would not tolerate. For example, the H-2A program ties the worker's visa to his employer, therefore, H-2A workers

COMPLAINT FOR DAMAGES - 6

are less likely to complain out of fear of being sent back to their country and not being brought back to work in the future.

31.    Prior to 2017, Stemilt knew that H-2A workers came from impoverished backgrounds.

32.    Prior to 2017, Stemilt had a policy of not re-hiring H-2A workers who failed to complete their H-2A employment contract.

33.    Prior to 2017, Stemilt knew that H-2A workers feared being blacklisted from future H-2A employment.

34.    Prior to 2017, Stemilt knew that its H-2A workers would be housed in isolated, rural company labor camps and rely almost exclusively on the company for transportation.

35.    Prior to 2017, Stemilt knew that H-2A workers obtained non-immigrant work visas that strictly limit employment within the United States to just one employer.

36.    Prior to 2017, Stemilt knew that its H-2A workers could not legally leave their worksite and seek employment at other farms.

37.    Prior to 2017, Stemilt knew that if the company fired an H-2A worker, the worker would have to pay for his own transportation and meal costs back to Mexico.

COMPLAINT FOR DAMAGES - 7

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**The Stemilt Work Contract**

38.     As part of the H-2A application process, Stemilt submitted to the United States Department of Labor an Agricultural and Food Processing Clearance Order ETA Form 790 which is a job order, or work contract, containing all pay and work conditions.

39.     The Department of Labor is required to review and approve the job order to ensure it complies with H-2A statutes and regulations to protect the wages and working conditions of Washington local farm workers.

40.     As part of the H-2A application process, Stemilt assured the Department of Labor that it would comply with all federal and state employment laws.

41.     Stemilt submitted a uniform H-2A job order to the United States Department of Labor that covered all owned or leased orchards in which it certified that the job order "describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job."

42.     Stemilt's second H-2A job order stated that it anticipated 35 hours of work per week covering Monday through Saturday.

43.     Stemilt's H-2A job order guaranteed minimum piece rates for various work.

44.     Stemilt's H-2A job order did not contain daily production standards.

COMPLAINT FOR DAMAGES - 8

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

45.     Stemilt knew that the Department of Labor did not approve production standards for H-2A employment contracts as a result of the 2016 wage and practice surveys conducted by the Washington State Employment Security Department.

46.     Stemilt's H-2A job order only stated, "Workers must work at a sustained pace and make bona-fide efforts to work efficiently and consistently that are reasonable under the climatic and all other working conditions."

**Stemilt's Illegal and Unauthorized Production Standards**

47.     During an upper management meeting in mid-September of 2017, Stemilt, along with its president West Mathison, unilaterally decided to alter the terms and conditions of the H-2A job order and impose production standards on all H-2A workers by requiring them to pick a specific number of bins of apples per day or they would be fired and sent back to Mexico.

**Stemilt's Discriminatory Employment Conditions Based on Alienage**

48.     Stemilt instructed its orchard managers to issue written warnings to the H-2A workers if they did not meet these daily production standards.

49.     Stemilt instructed orchard managers to fire and send back to Mexico, without compensating workers for any transportation or meal costs, any H-2A worker who received three warnings for not meeting daily production standards.

COMPLAINT FOR DAMAGES - 9

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

50.     To benefit Stemilt financially and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be fired.

51.     To benefit Stemilt financially and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be sent back to Mexico without any transportation or meal costs paid.

52.     To benefit Stemilt financially and intimidate its H-2A workforce, Stemilt's orchard managers and employees regularly threatened H-2A workers in group meetings that if daily production standards were not met, they would be blacklisted from future H-2A work with any agricultural employer in the United States.

53.     In 2017, Stemilt knew that its unilateral policy of imposing unlawful production standards, combined with the threat of termination and blacklisting, would cause H-2A workers to fear serious economic harm and keep them working in the orchards under duress.

**Stemilt Failed to Pay H-2A Workers for Wait Times**

54.     In 2017, Stemilt routinely transported H-2A workers housed at one Stemilt orchard site to pick fruit at a different Stemilt orchard site.

COMPLAINT FOR DAMAGES - 10

55. When H-2A workers had to work at other Stemilt orchards, they were dependent on Stemilt to transport them to and from the orchard.

56. When H-2A workers arrived at the orchard, Stemilt's orchard managers routinely required them to wait approximately half an hour or more before they were permitted to start work.

57. When H-2A workers finished work, Stemilt's orchard managers routinely required them to wait at least approximately half an hour or more while the manager completed paperwork in the office before transporting the workers back to their labor camp.

58. Stemilt failed to compensate H-2A workers for these waiting periods.

**Stemilt's Failure To Disclose Production Standards and Other FLCA Violations**

59. As part of the H-2A application process, Stemilt requested 1,177 H-2A workers to work at orchards owned by Stemilt or managed by Stemilt on behalf of other agricultural landowners for three months, from August 14 to November 15, 2017.

60. Of the 36 orchards listed in the 2017 job order, 34 were owned by other agricultural landowners such as: Lucky Bohemian Orchards, LLC; Gale Fruit Company, LLC; John & Sueanne Rizzuti; Nakata Orchards, Inc.; Ronald and Ruby Brixey; and, Monkey Ridge, LLC.

COMPLAINT FOR DAMAGES - 11

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

61.    In 2017, Stemilt operated as a licensed farm labor contractor to recruit and employ H-2A farmworkers at these and other orchards owned by third parties.

62.    Stemilt's H-2A job order stated that they anticipated 35 hours of work per week covering Monday through Saturday. While specific hours were listed for each of those days, no hours were listed for Sunday in the job order.

63.    Stemilt's H-2A job order guaranteed minimum piece rates for various work.

64.    In 2017, Stemilt created a uniform written disclosure in an attempt to comply with FLCA.

65.    Stemilt's 2017 FLCA written disclosure failed to disclose that Stemilt would require workers to meet daily production standards or face disciplinary action, including termination.

66.    Stemilt used it own employees to recruit H-2A workers to work at Stemilt in 2017.

**Plaintiffs Housed and Employed in Pasco Area**

**Factual Allegations of Plaintiff Margarito Fierro Cordero**

67.    Plaintiff Fierro Cordero lives in an impoverished town in Chihuahua, Mexico.

COMPLAINT FOR DAMAGES - 12

68.     Plaintiff Fierro Cordero comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

69.     Plaintiff Fierro Cordero worked for Stemilt as an H-2A worker from 2012 to 2017.

70.     In 2017, Plaintiff Fierro Cordero began working for Stemilt around the end of March at the Arrow Ridge orchard.

71.     Plaintiff Fierro Cordero entered into Stemilt's second H-2A employment contract ending on November 15, 2017 and was housed at Stemilt's Arrow Ridge labor camp.

72.     Plaintiff Fierro Cordero relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

73.     In addition to working at Arrow Ridge, Stemilt transported Plaintiff Fierro Cordero to other orchards in Mattawa, Othello, and Pasco to work.

74.     During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers ordered Plaintiff Fierro Cordero to meet daily production standards.

75.     Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Fierro Cordero in writing that he would be required to meet daily production standards or face discipline, including termination.

COMPLAINT FOR DAMAGES - 13

76.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Fierro Cordero that if the production standards were not met, he would be issued a written warning.

77.    Throughout the 2017 apple harvest, Stemilt's managers instructed Plaintiff Fierro Cordero that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

78.    During group H-2A worker meetings, Stemilt's managers and employees threatened Plaintiff Fierro Cordero and the other H-2A workers with sending them back to Mexico and never hiring them again if they did not meet the production standards.

79.    During group H-2A worker meetings, Stemilt's manager told Plaintiff Fierro Cordero and the other H-2A workers that if they did not like the working conditions, they could go back to Mexico and they would never be able to work for Stemilt or another company in the United States.

80.    When Stemilt transported Plaintiff Fierro Cordero from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required Plaintiff Fierro Cordero to wait approximately an hour or more before being permitted to start work.

COMPLAINT FOR DAMAGES - 14

81.     Once Plaintiff Fierro Cordero finished the work day, Stemilt's managers required him to wait approximately half an hour to allow the manager to finish paperwork before being transported back to Arrow Ridge.

82.     Plaintiff Fierro Cordero suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Fernando Mendez Franco**

83.     Plaintiff Mendez Franco lives in an impoverished town in Michoacan, Mexico.

84.     Plaintiff Mendez Franco comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

85.     Plaintiff Mendez Franco was hired and worked as an H-2A worker by Stemilt from 2012-2017.

86.     In 2017, Plaintiff Mendez Franco began working for Stemilt at Arrow Ridge in April.

87.     Toward the end of the first H-2A contract, Plaintiff Mendez Franco agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

88.     In 2017, Plaintiff Mendez Franco was housed at Stemilt's Arrow Ridge labor camp.

COMPLAINT FOR DAMAGES - 15

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

89.    Plaintiff Mendez Franco relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

90.    Plaintiff Mendez Franco spent considerable time on Stemilt's bus traveling to other Stemilt's orchards to work.

91.    During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Mendez Franco to meet daily production standards.

92.    Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Mendez Franco in writing that he would be required to meet daily production standards or face discipline, including termination.

93.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Mendez Franco that if the production standards were not met, he would be issued a written warning.

94.    Throughout the 2017 apple harvest, Stemilt's managers instructed Plaintiff Mendez Franco that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

95.    Stemilt's managers and employees threatened Plaintiff Mendez Franco and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

COMPLAINT FOR DAMAGES - 16

96.     Frequently, Stemilt's managers would inform Plaintiff Mendez Franco and the other H-2A workers that they would be working by piece-rate but they would frequently change to a lower rate in the afternoon.

97.     When Stemilt transported Plaintiff Mendez Franco from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required Plaintiff Mendez Franco to wait before being permitted to start work.

98.     Once Plaintiff Mendez Franco finished the work day, Stemilt's managers required him to wait approximately an hour to allow the manager to finish paperwork before being transported back to the Arrow Ridge orchard.

99.     Plaintiff Mendez Franco suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Jose Rodriguez Llerenas**

100.    Plaintiff Rodriguez Llerenas lives in an impoverished town in Colima, Mexico.

101.    Plaintiff Rodriguez Llerenas comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

102.    Plaintiff Rodriguez Llerenas was hired to work as an H-2A worker by Stemilt for the 2017 apple harvest.

COMPLAINT FOR DAMAGES - 17

103.   Plaintiff Rodriguez Llerenas agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

104.   In 2017, Plaintiff Rodriguez Llerenas was housed at Stemilt's Arrow Ridge labor camp.

105.   Plaintiff  Rodriguez Llerenas relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

106.   Plaintiff Rodriguez Llerenas spent considerable time on Stemilt's bus traveling to other Stemilt orchards to work.

107.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Rodriguez Llerenas that he had to meet daily production standards.

108.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Rodriguez Llerenas in writing that he would be required to meet daily production standards or face discipline, including termination.

109.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Rodriguez Llerenas that if the production standards were not met, he would be issued a written warning.

110.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Rodriguez Llerenas that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

COMPLAINT FOR DAMAGES - 18

111.   Stemilt's managers and employees threatened Plaintiff Rodriguez Llerenas and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

112.   When Stemilt transported Plaintiff Rodriguez Llerenas from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required him to wait before being permitted to start work.

113.   Once Plaintiff Rodriguez Llerenas finished the work day, Stemilt's managers required him to wait to allow the manager to finish paperwork before being transported back to the Arrow Ridge orchard.

114.   Plaintiff Rodriguez Llerenas suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Sandro Vargas Leyva**

115.   Plaintiff Vargas Leyva lives in Colima, Mexico.

116.   Plaintiff Vargas Leyva came to the United States to work as the economy in Mexico is very difficult.

117.   Plaintiff Vargas Leyva was hired and worked as an H-2A worker for Stemilt from 2013-2017.

118.   In 2017, Plaintiff Vargas Leyva began working for Stemilt in March.

COMPLAINT FOR DAMAGES - 19

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

119.   Toward the end of the first H-2A contract, Plaintiff Vargas Leyva agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

120.   In 2017, Plaintiff Vargas Leyva was housed at Stemilt's Arrow Ridge labor camp.

121.   Plaintiff Vargas Leyva relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

122.   Plaintiff Vargas Leyva spent considerable time on Stemilt's bus traveling to other Stemilt orchards to work.

123.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Vargas Leyva to meet daily production standards.

124.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Vargas Leyva in writing that he would be required to meet daily production standards or face discipline, including termination.

125.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Vargas Leyva that if the production standards were not met, he would be issued a written warning.

COMPLAINT FOR DAMAGES - 20

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

126.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Vargas Leyva that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

127.    Stemilt's managers and employees threatened Plaintiff Vargas Leyva and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

128.    When Stemilt transported Plaintiff Vargas Leyva from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required Plaintiff Vargas Leyva to wait before being permitted to start work.

129.    Once Plaintiff Vargas Leyva finished the work day, Stemilt's managers required him to wait approximately half an hour to allow the manager to finish paperwork before being transported back to the Arrow Ridge orchard.

130.    Plaintiff Vargas Leyva suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Octavio Gomez Garcia**

131.    Plaintiff Gomez Garcia lives in an impoverished town in Jalisco, Mexico.

132.    Plaintiff Gomez Garcia comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

COMPLAINT FOR DAMAGES - 21

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

133.   Plaintiff Gomez Garcia worked for Stemilt as an H-2A worker from 2013-2017.

134.   Plaintiff Gomez Garcia began working for Stemilt in April 2017.

135.   Plaintiff Gomez Garcia agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

136.   In 2017, Plaintiff Gomez Garcia was housed at Stemilt's JVO labor camp.

137.   Plaintiff Gomez Garcia relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

138.   Plaintiff Gomez Garcia spent considerable time on Stemilt's bus traveling to other Stemilt orchards to work.

139.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Gomez Garcia that he had to meet daily production standards.

140.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Gomez Garcia in writing that he would be required to meet daily production standards or face discipline, including termination.

141.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gomez Garcia that if the production standards were not met, he would be issued a written warning.

COMPLAINT FOR DAMAGES - 22

142.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gomez Garcia that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

143.   Stemilt's managers and employees threatened Plaintiff Gomez Garcia and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

144.   When Stemilt transported Plaintiff Gomez Garcia from the JVO labor camp to other orchards to work, Stemilt's managers required him to wait before being permitted to start work.

145.   Once Plaintiff Gomez Garcia finished the work day, Stemilt's managers required him to wait to allow the manager to finish paperwork before being transported back to the JVO orchard.

146.   Plaintiff Octavio Gomez Garcia suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Victor Padilla Plascencia**

147.   Plaintiff Padilla Plascencia lives in an impoverished town in Colima, Mexico.

148.   Plaintiff Padilla Plascencia comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

COMPLAINT FOR DAMAGES - 23

149.  Plaintiff Padilla Plascencia was hired to work as an H-2A worker by Stemilt in 2017.

150.  Plaintiff Padilla Plascencia began working for Stemilt in March 2017.

151.  Plaintiff Padilla Plascencia agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

152.  In 2017, Plaintiff Padilla Plascencia was housed at Stemilt's JVO labor camp.

153.  Plaintiff Padilla Plascencia relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

154.  Plaintiff Padilla Plascencia spent considerable time on Stemilt's bus traveling to other Stemilt orchards to work.

155.  During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Padilla Plascencia that he had to meet daily production standards.

156.  Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Padilla Plascencia in writing that he would be required to meet daily production standards or face discipline, including termination.

157.  Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Padilla Plascencia that if the production standards were not met, he would be issued a written warning.

COMPLAINT FOR DAMAGES - 24

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

158.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Padilla Plascencia that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

159.    Stemilt's managers and employees threatened Plaintiff Padilla Plascencia and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

160.    When Stemilt transported Plaintiff Padilla Plascencia from the JVO labor camp to other orchards to work, Stemilt's managers required him to wait before being permitted to start work.

161.    Once Plaintiff Padilla Plascencia finished the work day, Stemilt's managers required him to wait to allow the manager to finish paperwork before being transported back to the JVO orchard.

162.    Plaintiff Padilla Plascencia suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Alejandro Chavez Monroy**

163.    Plaintiff Chavez Monroy lives in an impoverished town in Jalisco, Mexico.

164.    Plaintiff Chavez Monroy comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

COMPLAINT FOR DAMAGES - 25

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

165.    Plaintiff Chavez Monroy worked for Stemilt as an H-2A worker from 2015-2017.

166.    In 2017, Plaintiff Chavez Monroy started working for Stemilt in February at the Ice Harbor labor camp.

167.    Plaintiff Chavez Monroy was hired to work as an H-2A worker by Stemilt for the 2017 apple harvest.

168.    Plaintiff Chavez Monroy agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

169.    In 2017, Plaintiff Chavez Monroy was housed at Stemilt's Ice Harbor labor camp.

170.    Plaintiff Chavez Monroy relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

171.    Plaintiff Chavez Monroy spent time on Stemilt's bus traveling to other Stemilt's orchards to work.

172.    During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Chavez Monroy that he had to meet daily production standards.

173.    Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Chavez Monroy in writing that he would be required to meet daily production standards or face discipline, including termination.

COMPLAINT FOR DAMAGES - 26

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

174.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Chavez Monroy that if the production standards were not met, he would be issued a written warning.

175.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Chavez Monroy that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

176.   Stemilt's managers and employees threatened Plaintiff Chavez Monroy and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

177.   When Stemilt transported Plaintiff Chavez Monroy from the Ice Harbor labor camp to other orchards to work, Stemilt's managers required him to wait before being permitted to start work.

178.   Once Plaintiff Chavez Monroy finished the work day, Stemilt's managers required him to wait to allow the manager to finish paperwork before being transported back to the Ice Harbor orchard.

179.   Plaintiff Chavez Monroy suffered emotional distress due to the working conditions at Stemilt in 2017

**Factual Allegations of Plaintiff Jose Mendoza**

180.   Plaintiff Mendoza comes from an impoverished town in Michoacan, Mexico.

COMPLAINT FOR DAMAGES - 27

181.   Plaintiff Mendoza worked for Stemilt as an H-2A worker for the first time in 2017.

182.   Plaintiff Mendoza came to the United States to work as the economic opportuinities in Mexico are very limited and the pay is not enough to support his family.

183.   In August of 2017, Plaintiff Mendoza began working for Stemilt pursuant to an H-2A contract with an end date of November 15.

184.   Plaintiff Mendoza was housed at Stemilt's Arrow Ridge labor camp.

185.   Plaintiff Mendoza relied on Stemilt for transportation from his isolated labor camp to different Stemilt orchards to work.

186.   Plaintiff Mendoza spent considerable time on Stemilt busses traveling to other Stemilt orchards to work.

187.   Throughout the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers threatened Plaintiff Mendoza that he had to meet daily production standards or he would be sent back to Mexico.

188.   During group meetings, Stemilt's managers regularly threatened Plaintiff Mendoza and other workers that if they did not meet production standards, they would be issued a written warning.

COMPLAINT FOR DAMAGES - 28

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

189.    During group meetings, Stemilt's managers regularly threatened Plaintiff Mendoza and other workers that if they received three warnings for not meeting production standards, they would be fired sent back to Mexico.

190.    During a group meeting, Stemilt managers threatened Plaintiff Mendoza and other workers that if they missed more than three days of work, they would be sent back to Mexico without the possibility of returning.

191.    After falling from a ladder and injuring his back, Plaintiff Mendoza opted against reporting his injury to Stemilt managers due to his fear of being sent back to Mexico.

192.    Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Mendoza in writing that he would be required to meet daily production standards or face discipline, including termination.

193.    Stemilt's managers and employees threatened Plaintiff Mendoza and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

194.    If production requirements were not met, Stemilt managers would inform Plaintiff Mendoza and other workers that they had to continue working additional time to avoid receiving written warnings.

COMPLAINT FOR DAMAGES - 29

195.    When Stemilt transported Plaintiff Mendoza from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required Plaintiff Mendoza to wait approximately an hour before being permitted to start work.

196.    Once Plaintiff Mendoza finished the work day, Stemilt's managers required him to wait approximately forty-five minutes to allow the manager to finish paperwork before transporting him back to the Arrow Ridge orchard.

197.    Plaintiff Mendoza left work at Stemilt towards the end of October 2017 due to discrimination and the constant threats to meet daily production standards.

198.    Plaintiff Mendoza suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Fernando Martinez Perez**

199.    Plaintiff Martinez Perez comes from an impoverished town in Jalisco, Mexico.

200.    Plaintiff Martinez Perez worked for Stemilt as an H-2A worker for the first time in 2017.

201.    Plaintiff Martinez Perez came to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

COMPLAINT FOR DAMAGES - 30

202.    In September of 2017, Plaintiff Martinez Perez began working at Stemilt under a contract with an end date of November 15.

203.    Plaintiff Martinez Perez began working at Stemilt's Ice Harbor labor camp.

204.    Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Martinez Perez in writing that he would be required to meet daily production standards or face discipline, including termination.

205.    During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Martinez Perez that he had to meet daily production standards.

206.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Martinez Perez that if the production standards were not met, he would be issued a written warning.

207.    Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Martinez Perez that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

208.    On multiple occasions, Plaintiff Martinez Perez heard Stemilt managers tell workers that if they were dissatisfied with the working conditions, they could return to Mexico and would never work for Stemilt or any other American company again.

COMPLAINT FOR DAMAGES - 31

209.   Plaintiff Martinez Perez left work at Stemilt towards the end of October 2017 due to discrimination and the constant threats to meet daily production standards.

210.   Plaintiff Martinez Perez suffered emotional distress due to the working conditions at Stemilt in 2017.

## Factual Allegations of Plaintiff Juan Lopez Gutierrez

211.   Plaintiff Lopez Gutierrez comes from an impoverished area in Colima, Mexico.

212.   Plaintiff Lopez Gutierrez worked for Stemilt as an H-2A worker for the first time in 2017.

213.   Plaintiff Lopez Gutierrez came to the United States to work because the economy in Mexico is very difficult and the pay is not enough to support his family.

214.   In August of 2017, Plaintiff Lopez Gutierrez began working for Stemilt at the Arrow Ridge orchard under an H-2A contract with an end date of November 15.

215.   Plaintiff Lopez Gutierrez relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

216.   Plaintiff Lopez Gutierrez spent considerable time on Stemilt busses traveling to other Stemilt's orchards to work.

COMPLAINT FOR DAMAGES - 32

217.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Lopez Gutierrez that he had to meet daily production standards.

218.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Lopez Gutierrez in writing that he would be required to meet daily production standards or face discipline, including termination.

219.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Lopez Gutierrez that if the production standards were not met, he would be issued a written warning.

220.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Lopez Gutierrez that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

221.   During a group H-2A worker meeting, Stemilt's manager told Plaintiff Lopez Gutierrez and the other H-2A workers that if they did not like the working conditions, they could go back to Mexico.

222.   During a group H-2A worker meeting, one of Stemilt's managers or employees referred to Plaintiff Lopez Gutierrez and his fellow crew members as "stupid Mexicans."

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

223.    When Stemilt transported Plaintiff Lopez Gutierrez from the Arrow Ridge labor camp to other orchards to work, Stemilt's managers required Plaintiff Lopez Gutierrez to wait an hour or more before being permitted to start work.

224.    Once Plaintiff Lopez Gutierrez finished the work day, Stemilt's managers required him to wait approximately half an hour to allow the manager to finish paperwork before transporting him back to Arrow Ridge.

225.    Plaintiff Lopez Gutierrez left work at Stemilt towards the end of October 2017 due to discrimination and the constant threats to meet daily production standards.

226.    Plaintiff Lopez Gutierrez suffered emotional distress due to the working conditions at Stemilt in 2017.

### Plaintiffs Housed and Employed Outside Pasco Area

### Factual Allegations of Plaintiff Omar Palma Renteria

227.    Plaintiff Palma Renteria comes from an impoverished town in Chihuahua, Mexico.

228.    Plaintiff Palma Renteria comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

229.    Plaintiff Palma Renteria worked for Stemilt as an H-2A worker in 2008, 2009, and from 2012 to 2017.

COMPLAINT FOR DAMAGES - 34

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

230.   Plaintiff Palma Renteria entered into Stemilt's second H-2A employment contract ending on November 15, 2017 and was housed at Stemilt's Mattawa labor camp.

231.   Plaintiff Palma Renteria relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

232.   Plaintiff Palma Renteria was transported to the Royal City, Quincy, and Pasco orchards.

233.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Palma Renteria to meet daily production standards.

234.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Palma Renteria in writing that he would be required to meet daily production standards or face discipline, including termination.

235.   Throughout the 2017 apple harvest, Stemilt's managers threatened to issue Plaintiff Palma Renteria written warnings if he did not meet production standards.

236.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Palma Renteria that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

COMPLAINT FOR DAMAGES - 35

237.   During group H-2A worker meetings, Stemilt's managers and employees threatened Plaintiff Palma Renteria and the other H-2A workers with sending them back to Mexico and never hiring them again.

238.   During group H-2A worker meetings, Stemilt's manager told Plaintiff Palma Renteria and the other H-2A workers that if they did not like the working conditions, they could go back to Mexico and they would never again be able to work for Stemilt or another company in the United States.

239.   When Stemilt transported Plaintiff Palma Renteria from the Mattawa orchard labor camp to other orchards to work, Stemilt's managers routinely required Plaintiff Palma Renteria to wait approximately an hour or more before being permitted to start work.

240.   Once Plaintiff Palma Renteria finished the work day, Stemilt's managers routinely required him to wait approximately half an hour to an hour to allow the manager to finish paperwork before being transported back to the Mattawa orchard.

241.   Plaintiff Palma Renteria provided labor to Stemilt under threat of termination and loss of future employment in the United States.

242.   Plaintiff Palma Renteria provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

COMPLAINT FOR DAMAGES - 36

243.    Plaintiff Palma Renteria provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

244.    Plaintiff Palma Renteria suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Jose Gallegos Gonzalez**

245.    Plaintiff Gallegos Gonzalez comes from an impoverished town in Jalisco, Mexico.

246.    Plaintiff Gallegos Gonzalez comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

247.    Plaintiff Gallegos Gonzalez was hired by Stemilt to work as an H-2A worker from 2015-2017.

248.    Toward the end of the first H-2A contract, Plaintiff Gallegos Gonzalez agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

249.    In 2017, Plaintiff Gallegos Gonzalez was housed in Quincy, Washington at Stemilt's labor camp.

250.    Plaintiff Gallegos Gonzalez relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

COMPLAINT FOR DAMAGES - 37

251.   Plaintiff Gallegos Gonzalez spent considerable time on Stemilt's bus traveling to other Stemilt orchards to work.

252.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Gallegos Gonzalez that he had to meet daily production standards.

253.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Gallegos Gonzalez in writing that he would be required to meet daily production standards or face discipline, including termination.

254.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gallegos Gonzalez that if the production standards were not met, he would be issued a written warning.

255.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Gallegos Gonzalez that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

256.   Stemilt's managers and employees threatened Plaintiff Gallegos Gonzalez and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

257.   Frequently, Stemilt's managers would inform Plaintiff Gallegos Gonzalez and the other H-2A workers that they would be working by piece-rate (and the company's H-2A contract guaranteed minimum piece rates); however, no

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

matter how hard he worked, his wages appeared to be pegged to the minimum hourly rate.

258.   When Stemilt transported Plaintiff Gallegos Gonzalez from the Quincy labor camp to other orchards to work, Stemilt's managers routinely required Plaintiff Gallegos Gonzalez to wait before being permitted to start work.

259.   Once Plaintiff Gallegos Gonzalez finished the work day, Stemilt's managers routinely required him to wait approximately half an hour to allow the manager to finish paperwork before being transported back to the Quincy orchard.

260.   Plaintiff Gallegos Gonzalez provided labor to Stemilt under threat of termination and loss of future employment in the United States.

261.   Plaintiff Gallegos Gonzalez provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

262.   Plaintiff Gallegos Gonzalez provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

263.   Plaintiff Gallegos Gonzalez suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Francisco Muñoz Medrano**

COMPLAINT FOR DAMAGES - 39

264.    Plaintiff Muñoz Medrano comes from an impoverished town in Jalisco, Mexico.

265.    Plaintiff Muñoz Medrano comes to the United States to work as the economy in Mexico is very difficult and the pay is not enough to support his family.

266.    Plaintiff Muñoz Medrano was hired to work as an H-2A worker by Stemilt for the 2017 apple harvest.

267.    Plaintiff Muñoz Medrano agreed to accept Stemilt's second H-2A employment contract, which ended on November 15, 2017.

268.    In 2017, Plaintiff Muñoz Medrano was housed in Othello, Washington at Stemilt's labor camp.

269.    Plaintiff Muñoz Medrano relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

270.    Plaintiff Muñoz Medrano spent considerable time on Stemilt's bus traveling to other Stemilt's orchards to work.

271.    During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Muñoz Medrano that he had to meet daily production standards.

COMPLAINT FOR DAMAGES - 40

272.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Muñoz Medrano in writing that he would be required to meet daily production standards or face discipline, including termination.

273.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Muñoz Medrano that if the production standards were not met, he would be issued a written warning.

274.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Muñoz Medrano that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

275.   Stemilt's managers and employees threatened Plaintiff Muñoz Medrano and the other H-2A workers with sending them back to Mexico and never being hired again if they did not meet the production standard.

276.   When Stemilt transported Plaintiff Muñoz Medrano from the Othello labor camp to other orchards to work, Stemilt's managers routinely required him to wait approximately twenty minutes after finishing his work before being transported back to the Othello orchard.

277.   Plaintiff Muñoz Medrano provided labor to Stemilt under threat of termination and loss of future employment in the United States.

278.   Plaintiff Muñoz Medrano provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

COMPLAINT FOR DAMAGES - 41

279.   Plaintiff Muñoz Medrano provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

280.   Plaintiff Muñoz Medrano suffered emotional distress due to the working conditions at Stemilt in 2017.

**Factual Allegations of Plaintiff Hector Bautista Salinas**

281.    Plaintiff Bautista Salinas came to the United States to work as the economy in Mexico is very difficult.

282.   Plaintiff Bautista Salinas was hired and worked as an H-2A worker for Stemilt in 2017.

283.   In August of 2017, Plaintiff Bautista Salinas began working for Stemilt pursuant to an H-2A contract which ended on November 15, 2017.

284.   In 2017, Plaintiff Bautista Salinas was housed at Stemilt's Staymane Flats labor camp.

285.   Plaintiff Bautista Salinas relied on Stemilt for transportation from his isolated labor camp to Stemilt's different orchards to work.

286.   Plaintiff Bautista Salinas spent considerable time on Stemilt's bus traveling to other Stemilt's orchards to work.

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

287.   During the 2017 apple harvest, even though his H-2A contract did not have production standards, Stemilt's managers instructed Plaintiff Bautista Salinas that he had to meet daily production standards.

288.   Prior to the start of the second H-2A contract, Stemilt never disclosed to Plaintiff Bautista Salinas in writing that he would be required to meet daily production standards or face discipline, including termination.

289.   Throughout the 2017 apple harvest, Stemilt's managers threatened Plaintiff Bautista Salinas that if the production standards were not met, he would be issued a written warning.

290.   Throughout the 2017 apple harvest, Stemilt's managers instructed Plaintiff Bautista Salinas that if he received three warnings for not meeting the production standards, he would be fired and sent back to Mexico.

291.   Stemilt's managers and employees threatened Plaintiff Bautista Salinas and the other H-2A workers with sending them back to Mexico and never being hired again if they did not work faster.

292.   When Stemilt transported Plaintiff Bautista Salinas from the Stayman Flats labor camp to other orchards to work, Stemilt's managers routinely required Plaintiff Bautista Salinas to wait before being permitted to start work.

COMPLAINT FOR DAMAGES - 43

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

293.   Once Plaintiff Bautista Salinas finished the work day, Stemilt's managers routinely required him to wait approximately half an hour before being transported back to the Stayman Flats orchard.

294.   Plaintiff Bautista Salinas provided labor to Stemilt under threat of termination and loss of future employment in the United States.

295.   Plaintiff Bautista Salinas provided labor to Stemilt due to fear that he would suffer serious financial harm if he did not meet daily production standards.

296.   Plaintiff Bautista Salinas provided labor to Stemilt due to fear that termination would lead to blacklisting from future H-2A employment in the United States.

297.   Plaintiff Bautista Salinas suffered emotional distress due to the working conditions at Stemilt in 2017.

## CAUSES OF ACTION

### COUNT ONE
### Alienage Discrimination - 42 U.S.C. § 1981

298.   Stemilt had a common practice of mistreating its H-2A workforce on the basis of alienage by using threats to send them back to Mexico, and to blacklist them, if they did not meet unlawful daily production standards and by imposing disproportionate discipline on them in violation of 42 U.S.C. § 1981.

COMPLAINT FOR DAMAGES - 44

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

## COUNT TWO

**(Only Non Pasco-Area Plaintiffs Palma Renteria,
Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas)**

### Trafficking Victims Protection Act – 18 U.S.C. § 1589(a)(4)

299.    Pursuant to the Trafficking Victims Protection Act, it is unlawful to obtain the labor or services of a person by, *inter alia*, "means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(4). The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

300.    Stemilt engaged in a scheme or pattern of threatening H-2A workers to cause them to believe that, if they did not meet unlawful daily production standards, they would suffer serious financial harm in violation of 18 U.S.C. § 1589(a)(4).

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

## <u>COUNT THREE</u>

**(Only Non Pasco-Area Plaintiffs Palma Renteria,
Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas)**

### <u>Trafficking Victims Protection Act – 18 U.S.C. § 1589(a)(3)</u>

301.  Pursuant to the Trafficking Victims Protection Act, it is unlawful to obtain the labor or services of a person by, *inter alia*, "by means of the abuse or threatened abuse of law or legal process." 18 U.S.C. § 1589(a)(3). The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action. 18 U.S.C. § 1589(c)(1).

302.  Stemilt engaged in a common practice of abusing federal and state laws including violations of H-2A laws and threatening to blacklist workers who complained from further employment in the United States in order to obtain the continued labor of its H-2A workers in violation of 18 U.S.C. §1589(a)(3).

COMPLAINT FOR DAMAGES - 46

## COUNT FOUR

### (Only Non-Pasco Area Plaintiffs Palma Renteria, Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas)

### Breach of Contract

303.   Stemilt breached its H-2A contract when it unilaterally imposed daily production standards requiring H-2A workers to pick a certain number of bins of apples per day.

304.   Stemilt breached its H-2A contract when it did not pay its H-2A workforce the piece rates enumerated in the Departement of Labor ETA Form 790.

305.   Stemilt breached its duty of good faith and fair dealing when it engaged in the common practice of imposing unlawful production standards requiring H-2A workers to pick a certain number of bins of apples per day.

## COUNT FIVE

### (All Plaintiffs except Plaintiff Martinez Perez)

### Willful Refusal To Pay Wages – RCW 49.52.050(2)

306.   Stemilt willfully refused to pay for Plaintiffs' wait times in violation of RCW 49.52.050(2).

307.   As a result, Plaintiffs are entitled to recover twice the amount of the wages withheld, as well as attorneys' fees and costs, pursuant to RCW 49.52.070.

COMPLAINT FOR DAMAGES - 47

## COUNT SIX
## Washington Farm Labor Contractors Act – RCW 19.30

308.    The FLCA prohibits farm labor contractors from making or causing to be made false, fraudulent, or misleading representations concerning the terms or conditions of employment. RCW 19.30.120(2).

309.    Stemilt violated the FLCA when it failed to inform Plaintiffs of daily production standard requirements in violation of RCW 19.30.120(2).

310.    The FLCA requires every farm contractor to comply with the terms and provisions of all legal and valid agreements and contracts entered into between the contractor in the capacity of a farm labor contractor and third persons. RCW 19.30.110(5).

311.    Stemilt failed to comply with the terms and provisions of all legal and valid agreements and contracts entered into between Stemilt, in its capacity as a farm labor contractor, and Plaintiffs when it enforced daily production standards that were neither in the H-2A contract nor were the production standards approved by government oversight entities in violation of RCW 19.30.110(5).

## PRAYER FOR RELIEF

Plaintiffs ask this Court to grant them the following relief:

COMPLAINT FOR DAMAGES - 48

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

1.     Award to Plaintiffs their actual damages for violations of 42 U.S.C. § 1981, including punitive damages as a result of Stemilt's callous indifference to the Plaintiffs' federally protected rights;

2.     Award to Plaintiffs emotional distress damages pursuant to 42 U.S.C. § 1981.

3.     Award to Non Pasco-Area Plaintiffs Palma Renteria, Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas all profits gained from the forced labor Stemilt imposed on H-2A workers, including the imposition of illegal production standards, pursuant to 18 U.S.C. §1595(a) and Washington contract law;

4.     Award punitive damages to Non Pasco-Area Plaintiffs Palma Renteria, Gallegos Gonzalez, Muñoz Medrano, and Bautista Salinas pursuant to 18 U.S.C. §1595(a) as Stemilt recklessly violated Plaintiffs' rights by abusing its authority over its H-2A workforce;

5.     Award to Plaintiffs, except Plaintiff Martinez Perez, the amount of wages withheld for wait times plus double damages pursuant to RCW 49.52.070;

6.     Award to Plaintiffs actual damages or $500 per person per violation, whichever is greater, for each FLCA violation pursuant to RCW 19.30.170(2);

7.     Award attorney fees and costs pursuant to 42 U.S.C. § 1988, RCW 49.48.030, RCW 49.52.070, and, RCW 19.30.170(1); and,

Columbia Legal Services
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855

8.  Grant other further relief as just and appropriate.

DATED this 27th day of January, 2022.

COLUMBIA LEGAL SERVICES

s/Maria Diana Garcia
Maria Diana Garcia, WSBA #39744
Blanca E. Rodriguez, WSBA #27745
Joachim Morrison, WSBA #23094
Amy L. Crewdson, WSBA #9468
Andrés E. Muñoz, WSBA #50224
Ashleen E. O'Brien, WSBA #58429
7103 W. Clearwater Avenue, Suite C
Kennewick, WA 99336
(509) 374-9855
diana.garcia@columbialegal.org
blanca.rodriguez@columbialegal.org
joe.morrison@columbialegal.org
amy.crewdson@columbialegal.org
andres.munoz@columbialegal.org
ashleen.obrien@columbialegal.org
*Attorneys for Plaintiffs*