BRENDAN MONAHAN (WSBA #22315)
JUSTO G. GONZÁLEZ (WSBA #39127)
DEREK RED ARROW FRANK (WSBA #55090)
ARIANAH MUSSER (WSBA #57512)
STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. Naches Avenue
Yakima, WA 98901-2757
Phone: 509-853-3000
Facsimile: 509-895-0060

LANCE PELLETIER (WSBA #49030)
DAVIS WRIGHT TREMAINE, LLP
920 Fifth Avenue, S-1610
Seattle, WA 98104-1610
Phone: (206) 622-3150
Facsimile: (206) 757-7700

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARGARITO FIERRO CORDERO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> STEMILT AG SERVICES, LLC, <br><br> Defendant. | Case No.: 2:22-cv-00013-TOR <br><br> STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> *Hearing with Oral Argument* <br> October 5, 2023 at 10:30 a.m. |

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 1
052556.008 \ 103483716v6

# Table of Contents

I. AUTHORITY ................................................................................8

   A.   Summary Judgment Standards ..........................................8

   B.   Plaintiffs' Section 1981 Claims Must Be Dismissed Because There is No Evidence of Intentional Discrimination Based on "Alienage" ......................................................................8

      1.   Each Plaintiff Has the Burden of Proving Intentional Discrimination...............................................9

      2.   Plaintiffs Fail to Show They Experienced Unlawful Discrimination Based On Their Citizenship............................10

   C.   Plaintiffs Are Not "Victims" of the Trafficking Victims Protections Reauthorization Act.........................................15

      1.   Stemilt Neither Withheld Any Worker's Visa nor Engaged in Any Act with the Criminal Intent to "Maintain Labor" .......15

      2.   Plaintiffs Remaining Human Trafficking Allegations..............16

      3.   Stemilt Did Not Obtain Plaintiffs' Labor Using Force, Threats, or Any Other Improper Method................................24

   D.   This is a Garden Variety, Employment-Breach of Contract Case ......39

      1.   Stemilt Performed its Obligations Under the Contract............40

      2.   Plaintiffs Do Not Show Damages for this Alleged Breach ......45

      3.   Plaintiffs Mendez Perez, Mendez Franco, Gilberto and Octavio Gomez Garcia, Gomez Rivera, and Vargas Leyva Breached By Abandoning their Contracts ...............................46

II. CONCLUSION ........................................................................52

CERTIFICATE OF SERVICE .......................................................54

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 2

052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1

## Cases

2

*A.B. v. Marriot Intl., Inc.*
  455 F. Supp. 3d 171, 189 (E.D. Pa. 2020) ...........................................20

3

*Alvarado v. Universidad Carlos Albizu*
  2010 WL 3385345 (S.D. Fla. Aug. 25, 2010) ....................................33

4

*Bistline v. Parker*
  918 F.3d 849, 871 (10th Cir. 2019) ....................................................18

5

*Camayo v. John Peroulis & Sons Sheep, Inc.*
  2012 WL 4359086 (D. Colo. Sept. 24, 2012) ....................................33

6

*Carter v. Paschall Trucking Lines, Inc.*
  2023 WL 359559 (W.D. Ky. Jan. 23, 2023) .......................................23

7

*Celotex Corp. v. Catrett*
  477 U.S. 317, 323 (1986) ...................................................................8

8

*Cmty. House, Inc. v. City of Boise*
  490 F.3d 1041, 1048 (9th Cir. 2007) .................................................10

9

*Coghlan v. Am. Seafoods Co. LLC*
  413 F.3d 1090, 1095 (9th Cir. 2005) ...................................................8

10

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*
  140 S. Ct. 1009, 1019 (2020) ..............................................................9

11

*Cook v. Johnson*
  7 Wn.2d 19, 23 (1950).......................................................................46

12

*Crownover v. State ex rel. Dep't of Transp.*
  165 Wn. App. 131, 265 P.3d 971 (2011) ...........................................50

13

*Davis v. Fred's Appliances, Inc.*
  171 Wn. App. 348, 287 P.3d 51 (2012) .............................................31

14

*Davis v. Fred's Appliance, Inc.*
  171 Wn. App. 348, 287 P.3d 51 (2012) .............................................50

15

*Ditullo v. Boehm*
  662 F.3d 1091 (9th Cir. 2011)............................................................19

16

*Doe 1 v. Red Roof Inns, Inc.*
  2020 WL 1872335 (N.D. Ga. Apr. 13, 2020) ...................................19

17

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*
  470 F.3d 827, 839 (9th Cir. 2006)...................................................9, 12

12

13

14

15

16

17

18

19

20

21

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 3
052556.008 \ 103483716v6

*Ebling v. Gove's Cove, Inc.*
  34 Wash. App. 495, 499 (1983) ........................................................46

*Ferrill v. Parker Group, Inc.*
  168 F.3d 468, 472 (11th Cir. 1999)..................................................10

*Francom v. Costco Wholesale Corp.*
  98 Wn. App. 845, 991 P.2d 1182 (2000) .........................................31

*Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*
  694 F.2d 531 (9th Cir. 1982).......................................................10, 14

*Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*
  458 U.S. 375, 389 (1982) .................................................................9

*Glasgow v. Georgia-Pac. Corp.*
  103 Wn.2d 401, 693 P.2d 708 (1985) .........................................31, 50

*Headley v. Church of Scientology Int'l*
  687 F.3d 1173, 1180 (9th Cir. 2012)......................................33, 35, 36

*Henningsen v. Worldcom, Inc.*
  102 Wn. App. 828, 9 P.3d 948 (2000) ............................................32

*Hill v. GTE Directories Sales Corp.*
  71 Wn. App. 132, 856 P.2d 746 (1993) ..........................................49

*Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*
  139 Wn. App. 743, 162 P.3d 1153 (2007) .......................................45

*Ketchum v. Albertson Bulb Gardens, Inc.*
  142 Wash. 134, 252 P. 523 (1927)..................................................45

*Larkin v. Pullman-Standard Div., Pullman Inc.*,
  854 F.2d 1549, 1561 (11th Cir. 1988)), *reversed on other grounds by Swint v. Pullman-Standard, Inc.*, 493 U.S. 929 (1989)................................10

*Lehrer v. State Dep't of Social & Health Servs.*
  101 Wn. App. 509, 517, 5 P.3d 722 (2000) .....................................39

*Martínez-Rodríguez v. Giles*
  31 F.4th 1139, 1150 (9th Cir. 2022)......................................21, 26, 35

*Montoya v. Regents of Univ. of Cal.*
  2010 WL 2731767 (S.D. Cal. July 9, 2010).....................................11

*Muchira v. Al-Rawaf*
  850 F.3d 605, 620 (4th Cir. 2017)........................................21, 22, 26

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 4
052556.008 \ 103483716v6

*Noble v. Weinstein*
335 F. Supp. 3d 504, 525 (S.D.N.Y. 2018) ...........................................................20

*Noyes v. Kelly Servs.*
488 F.3d 1163, 1170 (9th Cir. 2007) ....................................................................11

*Pavon v. Swift Transp. Co., Inc.*
192 F.3d 902, 908 (9th Cir. 1999) ..........................................................................9

*Ratha v. Phatthana Seafood Co.*
2017 WL 8292922 (C.D. Cal. Dec. 21, 2017) ....................................................25

*Rivera v. Nat'l R.R. Passenger Corp.*
331 F.3d 1074, 1078 (9th Cir. 2003) ...............................................................8, 43

*Roe v. Howard*
917 F.3d 229 (4th Cir. 2019) ...............................................................................20

*Rosas v. Sarbanand Farms, LLC*
329 F.R.D. 671 (W.D. Wash. 2018) ....................................................................23

*Ruiz v. Zoom Video Commc'ns Inc.*
2022 WL 770293 (W.D. Wash. Feb. 1, 2022) .................................................9, 14

*Sullivan v. Dollar Tree Stores, Inc.*
623 F.3d 770, 779 (9th Cir. 2010) .......................................................................43

*Texas Dept. of Cmty. Affairs v. Burdine*
450 U.S. 248, 252 (1981) .....................................................................................11

*United States v. Bradley*
390 F.3d 145, 151 (1st Cir. 2004) ........................................................................33

*United States v. Callahan*
801 F.3d 606, 620 (2005) .....................................................................................23

*United States v. Dann*
652 F.3d 1160, 1170 (9th Cir. 2011) ..............................................................22, 33

*United States v. Kozminski*
487 U.S. 931, 948 (1988) .....................................................................................33

*United States v. Rivera*
2012 WL 2339318 (E.D.N.Y. June 19, 2012) .....................................................33

*Vasquez v. County of Los Angeles*
349 F.3d 634, 642 (9th Cir. 2003) ..................................................................11, 34

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 5
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

*Washington v. Boeing Co.*
  105 Wn. App. 1, 19 P.3d 1041 (2000) ..................................................48

*Willener v. Sweeting*
  107 Wn.2d 388, 730 P.2d 45 (1986) ..................................................39

**Statutes**

18 U.S.C. § 1589(a) ................................................................. 17, 29

18 U.S.C. § 1589(c)(2)...............................................................22

18 U.S.C. § 1592 ......................................................................15

18 U.S.C. § 1595 ................................................................. 17, 19

18 U.S.C. § 1595(a) ..................................................................20

18 U.S.C. §§ 1589(a)(3) .............................................................18

22 U.S.C. § 7101(a) ..................................................................17

Victims of Trafficking and Violence Protection Act of 2000 § 102(b)(13)...........22

William Wilberforce Trafficking Victims Protection Reauthorization Act of
  2008
  PL 110–457, Dec. 23, 2008, 122 Stat 5044........................................17

**Other Authorities**

"No Way To Treat A Guest" https://www.farmworkerjustice.org/wp-
  content/uploads/2012/07/7.2.a.6-fwj.pdf ............................................15

**Regulations**

31 CFR § 515.335 ....................................................................13

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 6
052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

Defendant Stemilt Ag Services, LLC ("Stemilt") moves for summary judgment on all federal causes of action in Plaintiffs' Second Amended Complaint. Stemilt also moves for summary judgment on the breach of contract claims at Count V for Plaintiffs Gilberto Gomez Garcia, Jonathan Gomez Rivera, Sandro Vargas Leyva, Jose Rodriguez Llerenas, Fernando Mendez Franco, and Fernando Martinez Perez. The only pending claims not subject to this motion are the state law breach of contract claims for Plaintiffs Octavio Gomez Garcia and Bismark Perez Zepeda, and the remaining "bus wait time" wage claims brought under Washington's Minimum Wage Act, chapter 49.52 RCW.

Stemilt is, of course, aware that it files this motion following the issuance of ECF No. 161, in which the Court found there to be material issues of fact regarding Plaintiffs' breach of contract claims. The Court's ruling recognizes Stemilt and each Plaintiff owed one another contractual duties, and concludes that the issue of whether material breaches occurred, or whether damages resulted from those breaches, are appropriate for a jury. Stemilt nevertheless contends that here, when we closely analyze the specific experiences of the six individual Plaintiffs, no reasonable juror could conclude that Stemilt materially breached its contractual duty to each such Plaintiff. Further, the evidence shows no damages proximately occurred and no reasonable juror could conclude that Plaintiffs were constructively discharged from Stemilt's employ.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 7

052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

# I. AUTHORITY

## A.    Summary Judgment Standards

The Court is familiar with the standards for summary judgment. Dismissal is necessary if the admissible evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[E]vidence must be 'specific and substantial'" to survive summary judgment; conclusory allegations are insufficient. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005); *see also Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

## B.    Plaintiffs' Section 1981 Claims Must Be Dismissed Because There is No Evidence of Intentional Discrimination Based on "Alienage"

Plaintiffs allege Stemilt discriminated against them based on their "alienage" in violation of 42 U.S.C. § 1981. ECF No. 103 ¶ 370. To survive this motion, each Plaintiff must present specific and substantial facts showing he has been the victim of intentional discrimination because he lacks U.S. citizenship. Because each Plaintiff fails this burden, their claims must be dismissed.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 8
052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

**1. Each Plaintiff Has the Burden of Proving Intentional Discrimination**

Section 1981 prohibits intentional race and alienage discrimination in the making and enforcement of public and private contracts. 42 U.S.C. § 1981. To establish a violation of section 1981 for alienage discrimination, a plaintiff must prove that he was intentionally discriminated against because he lacked U.S. citizenship. *Pavon v. Swift Transp. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999); *Ruiz v. Zoom Video Commc'ns Inc.*, 2022 WL 770293 (W.D. Wash. Feb. 1, 2022) ("alienage discrimination is discrimination based on the basis of citizenship, not immigration status."). A plaintiff must also identify an impaired contractual relationship under which he has rights and show the defendant impaired that relationship because of intentional discrimination. *See Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 389 (1982); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (Section 1981 plaintiff must "prove that, but for [its citizenship status], it would not have suffered the loss of a legally protected right.").

As these authorities make clear, section 1981 liability must be founded on purposeful, intentional discrimination; a showing of disparate impact because of neutral intent is insufficient. *See Gen. Building Contractors*, 458 U.S. at 388-89; *Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*, 470 F.3d 827, 839 (9th Cir. 2006) (citing *Gen. Contractors* and recognizing that Section 1981 "prohibits

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 9

052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

only purposeful discrimination and therefore does not permit claims of disparate impact."). Thus, "only direct or inferential modes of proving intentional discrimination are available to the § 1981 plaintiff." *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999); *see Larkin v. Pullman-Standard Div., Pullman Inc.*, 854 F.2d 1549, 1561 (11th Cir. 1988)  (where a plaintiff proceeds on a theory of disparate impact, the plaintiff is limited to Title VII and cannot seek the broader section 1981 remedies and longer liability period), *reversed on other grounds by Swint v. Pullman-Standard, Inc.*, 493 U.S. 929 (1989).

## 2.    Plaintiffs Fail to Show They Experienced Unlawful Discrimination Based On Their Citizenship

A plaintiff alleging intentional discrimination in their employment under section 1981 must show they were singled out and treated less favorably than others on account of their citizenship. The test under section 1981 is the same as the formulation used in Title VII discriminatory treatment cases. *See, e.g., Gay v. Waiters' and Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531 (9th Cir. 1982). A plaintiff may show intentional discrimination by presenting a facially discriminatory policy: one that explicitly treats non-citizens less favorably. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007). But there is no such allegation here.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 10
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

In the absence of a facially discriminatory policy, the plaintiff must first prove, by a preponderance of the evidence, a prima facie case of intentional discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007). Plaintiffs always retain the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *Montoya v. Regents of Univ. of Cal.*, 2010 WL 2731767, at *16 (S.D. Cal. July 9, 2010) ("It is the plaintiff's ultimate burden of persuading the court that he has been the victim of intentional discrimination, and he must do so by presenting 'specific' and 'substantial' facts showing that there is a genuine issue for trial") (citations omitted).

Here, Plaintiffs' theory of a section 1981 violation is articulated in a single sentence of their Second Amended Complaint: "Stemilt had a common practice of mistreating its H-2A workforce on the basis of alienage by using threats to send them back to Mexico and to blacklist them if they did not meet unlawful daily production standards and by imposing disproportionate discipline on them in violation of 42 U.S.C. § 1981."[1] ECF No. 103 ¶ 370.

---

[1] Plaintiffs also allege that "Stemilt had a common practice of imposing discipline which had a disparate impact on H-2A workers on the basis of national origin." ECF

Giving this allegation its fairest and most charitable reading, Plaintiffs appear to argue that Stemilt seized upon their status as H-2A temporary visa workers to push super-contractual production requirements, believing Plaintiffs could be compelled to perform the "extra" work because they were vulnerable guest workers who might never have the opportunity to earn such comparably elevated wages again. Central to Plaintiffs' theory is they were only legally able to work for one U.S. employer in 2017: Stemilt. And that if an H-2A worker is terminated for any reason, his only lawful option is to return to Mexico. Plaintiffs contrast this dynamic with the options of the domestic workers, who may simply walk across the street and pick apples somewhere else. Or work in hops. Or construction. Because Plaintiffs'

---

No. 103 at ¶ 147. This allegation of "disparate impact" based on a plaintiff's "national origin" should be dismissed out of hand—as discussed at part II(B)(1), section 1981 "does not permit claims of disparate impact." *Doe v. Kamehameha Schools*, 470 F.3d at 839. Nor does it provide protections based on a plaintiff's "national origin" –that is protected by Title VII. Plaintiffs abandoned their national origin discrimination claims in the *Gomez Garcia* action after receiving a safe harbor letter. *See Gomez Garcia*, ECF Nos. 332, 345.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

visas bind them to a single employer, Plaintiffs argue, they may be exploited by means that are not effective with domestic workers.

While this framing may highlight structural inequities in the H-2A program, it simply does not support a cognizable Section 1981 claim. And that's because Plaintiffs must still show that Stemilt intentionally discriminated **against** them and **in favor** of domestic workers **because** of the contrasting absence and presence of U.S. citizenship. At the claim's most basic level, Plaintiffs impliedly ask the Court to assume that the domestic workers are U.S. citizens, without evidence and despite admissions Plaintiffs do not know any worker's citizenship status. *See* SMF 30; *see a, e.g., Gomez Garcia,* ECF No. 98-3 at 37:6-12; *Gomez Garcia*, 102-3 at 40:9-41:4; *see also Gomez Garcia,* ECF No. 102-2 at 47:3-22 (Plaintiff Gallegos opining that local workers were "illegals"). This is a fatal flaw.

Here, it is undisputed that both Stemilt's H-2A workers and their alleged comparator class, Stemilt's domestic workers, are "aliens." More than 90% of the "domestic" harvest workforce at Stemilt in 2017 was composed of permanent resident aliens. SMF 30. Neither Plaintiffs, as H-2A workers, nor Stemilt's domestic workers are citizens, meaning that the discrimination Plaintiffs allege is based on visa status rather than alienage. *See* 31 CFR § 515.335 (defining permanent resident aliens). Visa status is not protected by section 1981. *Ruiz v. Zoom Video Commc'ns,*

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 13
052556.008 \ 103483716v6

*Inc.*, 2022 WL 770293, at \*2 (W.D. Wash. Feb. 1, 2022) ("alienage discrimination is discrimination on the basis of citizenship, not visa status.").

Plaintiffs' theory also fails on the facts. There is no evidence or testimony that Stemilt's alleged bin production requirements were imposed only on H-2A workers. *Compare with* SMF 60, Graham Decl. ¶ 49 (all Stemilt policies applied equally to all workers). Plaintiffs previously submitted what they contend is coherent statistical analysis to show that discipline was imposed disproportionately on H-2A workers, but that analysis consists of little more than a cursory examination pointing out that H-2A workers received a greater number of total disciplinary notices than "local workers" during the 2017 harvest. *See* ECF No. 135 ¶ 99. Again, disparate treatment cannot support a section 1981 claim and Plaintiffs do not identify any similarly situated local workers, let alone any who are U.S. citizens; they do not allege that Stemilt employed a comparable number of local workers and H-2A workers or that the groups were similarly competent, experienced, or diligent; and they make no efforts to connect their skeletal, unreliable statistical analysis to any individual Plaintiff's experience. *See* SMF 109-116; *Gay v. Waiters' & Dairy Lunchmen's Union, Loc. No. 30*, 694 F.2d 531, 550 (9th Cir. 1982) ("Of course, if the claim analyzed is individual rather than class, the statistics must be relevant to the particular plaintiff's claim.").

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 14
052556.008 \ 103483716v6

Plaintiffs wholly fail to show discriminatory intent based on citizenship. Their bare allegations that Stemilt exploited their temporary guest worker status to make them work harder than their contract required echo a common critique farm labor advocates make of the H-2A system. *See* "No Way To Treat A Guest" https://www.farmworkerjustice.org/wp-content/uploads/2012/07/7.2.a.6-fwj.pdf. But that policy critique is not a legal or factual basis for a section 1981 claim— particularly where, as here, the employer allegedly favored one group of non-citizens over another with the alleged "intent" to harvest perishable fruit more quickly.

Plaintiffs fail to produce evidence of discrimination based on citizenship or of an invidious discriminatory intent based on citizenship. Their claims under Count One of the Second Amended Complaint must be dismissed with prejudice.

## C.    Plaintiffs Are Not "Victims" of the Trafficking Victims Protections Reauthorization Act

### 1.    Stemilt Neither Withheld Any Worker's Visa nor Engaged in Any Act with the Criminal Intent to "Maintain Labor"

This Court should dismiss Plaintiffs Mendoza Aguiano, Fierro Cordero, Octavio Gomez Garcia, Vargas Leyva, and Padilla Plascencia's claim that Stemilt violated 18 U.S.C. § 1592(a) by intentionally withholding H-2A workers' permits for the purpose of restricting their movement in order to unlawfully maintain their labor. ECF No. 103 ¶¶ 375-76. This Court previously found that "no reasonable trier of fact could conclude [Stemilt] knowingly withheld Plaintiffs' updated work

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

permits in order to maintain Plaintiffs' labor or service, especially where Plaintiffs received the permits even when they ended their employment"—and these Plaintiffs present no additional evidence or authority supporting their claims. *Gomez Garcia*, ECF No. 346 at 11:4-10; *see* SMF 44-56. Plaintiffs Vargas Leyva and Padilla Plascencia have not formally withdrawn these "visa withholding" claims despite having represented they are not pursuing them. *See* ECF No. 106 at 7:15-19. Accordingly, and for all the reasons set forth at *Gomez Garcia* ECF Nos. 306, 307, and 329, Stemilt asks that this Court again grant summary judgment in favor of Stemilt and dismiss the "visa withholding" claims with prejudice.

## 2.    Plaintiffs Remaining Human Trafficking Allegations

Plaintiffs bring "forced labor" claims under § 1589(a)(3) and (4). These claims are predicated on allegations that Stemilt engaged in a "scheme" or "common practice" of threatening Plaintiffs to cause them to believe that, if they did not meet unlawful daily production standards or "complained", they would suffer serious financial harm and/or blacklisting—meaning that Stemilt would allegedly prevent that worker from obtaining future employment in the United States. Plaintiffs fail to correctly plead or present individualized evidence in support of these incendiary and false allegations. They must be dismissed.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 16
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

**a.    Plaintiffs Fail To Establish Stemilt Knowingly Obtained Plaintiffs' Labor Through Force, With Criminal Intent, or That Any Allegedly Unlawful Action by Stemilt Caused Any Plaintiff to Provide Labor**

Congress enacted the TVPA in the year 2000 "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." TVPA, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464, 1466 (codified at 22 U.S.C. § 7101(a)). In this Act, Congress created several new federal criminal offenses intended to combat human trafficking comprehensively and effectively. As relevant here, the TVPA criminalized "[f]orced labor," "by means of the abuse or threatened abuse of law or legal process" or by means of a scheme, plan, or pattern "intended to cause the person to believe that, if they did not perform such labor or services, they would suffer serious harm." *See* 18 U.S.C. § 1589(a).

Congress amended and reauthorized the TVPA three times since its enactment, adding a civil remedy provision in 2003 permitting trafficking victims to sue their traffickers, which is codified at 18 U.S.C. § 1595.[2] That provision reads,

_____

[2] Congress later expanded the remedies available to trafficking victims, permitting them to also recover from those who facilitate trafficking ventures. William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL 110–457, Dec. 23, 2008, 122 Stat 5044. But Plaintiffs here allege that Stemilt itself

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 17
052556.008 \ 103483716v6

(a) An individual who is a victim of a violation of [chapter 77] may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages . . .

(b)(1) Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim . . .

. . . .

On its face, this section provides a private right of action for victims of criminal human trafficking to seek a civil remedy. Here, Plaintiffs allege Stemilt engaged in **<u>criminal</u>** human trafficking by violating 18 U.S.C. §§ 1589(a)(3) and (4). There are two ways to violate this statute, "[o]ne can violate the statute either as a primary offender" under Section 1589(a) "or simply by benefitting financially from participation in a 'venture' with the primary offender" under Section 1589(b). *Bistline v. Parker*, 918 F.3d 849, 871 (10th Cir. 2019). Because Plaintiffs claim Stemilt is a primary offender under Section 1589(a), they would need to show that Stemilt "knowingly" committed these acts with the requisite intent.

Notably, Plaintiffs have not brought a civil action under 1595(a); they allege only criminal violations by Stemilt under section 1589(a) and argue that this permits them the option to choose a civil remedy. *Compare* ECF No. 103 ¶¶ 371-74;

---

trafficked them and directly violated § 1589(a); this amendment does not affect the analysis. *See* ECF No. 103 ¶¶ 371-74.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 18
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

*compare with, e.g., Doe 1 v. Red Roof Inns, Inc.*, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020) (dismissing both standalone civil claim and claims based on alleged criminal violations of TVPA). Plaintiffs' approach is not supported by the text of the statute, which provides civil remedies only for "victim[s] of a violation of the chapter" who "bring a civil action against the perpetrator." 18 U.S.C. § 1595. The first hurdle facing Plaintiffs is whether they may pursue a secondary civil remedy in the first instance against a defendant who is an alleged primary offender; that is, must they first establish that they are a "victim" of a human trafficking crime where no criminal liability has been established?

The plain language of the statute, including the use of the terms "victim", "perpetrator," and the requirement that "[a]ny civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim" suggests that Plaintiffs must first establish criminal culpability. *See* 18 U.S.C. § 1595. However, Stemilt is aware of no case directly addressing this issue. In its research, actions seeking a civil remedy under the TVPRA are generally brought against either (i) a convicted perpetrator following a criminal proceeding or (ii) by a victim against a knowing beneficiary of the trafficking from a relationship with the convicted trafficker sufficient to meet the requirements of § 1581(a). *See, e.g., Ditullo v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) (civil action following guilty plea); *Doe 1,* 21 F.4th 714 (civil suit brought by sex

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 19
052556.008 \ 103483716v6

trafficking victims against hotel franchisors, alleging they "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture [where they] knew or should have known [the perpetrator] engaged in an act in violation" of the TVPA).

This may be a distinction without a difference: Because they allege direct violations of the forced labor statute, Plaintiffs must prove culpability under that criminal statute to avail themselves of the civil remedy. *See, e.g., Noble v. Weinstein*, 335 F. Supp. 3d 504, 514-25 (S.D.N.Y. 2018) (requiring alleged victim seeking a civil remedy under § 1595(a) first prove the criminal offense and granting motion to dismiss in part)[3]; *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) (challenge to jury

---

[3] Stemilt acknowledges that this issue appears to be the subject of a split in the federal district courts to consider the standards governing the civil remedy. *See generally A.B. v. Marriot Intl., Inc.*, 455 F. Supp. 3d 171, 182-89 (E.D. Pa. 2020) (identifying split and disagreeing with *Noble*). Each decision disagreeing with *Noble* does so because Congress distinguished the legal standard applicable in claims brought by victims against <u>beneficiaries</u> of trafficking. *See id.* In those circumstances, the victim must show that the beneficiary "knew or should have known" of the criminal conduct. *See* 18 U.S.C. § 1595(a). That standard does not apply to suits against "perpetrators" for "violations of [the TVPRA]," as asserted here. *Id.*

verdict finding defendant liable under criminal statutes). Specifically, Plaintiffs must establish the requisite *actus reus* and *mens rea*, which is that Stemilt, acting in its corporate status, "knowingly" and with criminal intent obtained their labor through force, or the threat of force, as set forth at § 1589(a)(3), (4). *Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022). Plaintiff must also show Stemilt in fact obtained their labor "by means of" that abuse—i.e., Stemilt's alleged illegal actions <u>caused</u> each Plaintiff to provide the labor Stemilt obtained. Plaintiffs do not plead knowledge or intent at the corporate level and they do not show it; they also wholly fail to establish causation. Dismissal is warranted because no Plaintiff establishes the elements of a human trafficking claim under any standard.

**b.     Plaintiffs' Allegations Do Not Constitute Forced Labor**

Plaintiffs generically allege Stemilt forced their labor by engaging in a "scheme" or "common practice" of threatening Plaintiffs to cause them to believe that, if they did not meet unlawful daily production standards or "complained", they would suffer serious financial harm and immigration consequences, including blacklisting. The conduct alleged by Plaintiffs falls far short of the misconduct contemplated by these criminal statutes.

"[N]ot all bad employer-employee relationships or even bad employer-immigrant . . . relationships will constitute forced labor." *Muchira v. Al-Rawaf*, 850 F.3d 605, 620 (4th Cir. 2017) (quoting *United States v. Dann*, 652 F.3d 1160, 1170

(9th Cir. 2011)). In passing section 1589 of the TVPA, Congress intended to "reach cases in which persons are held in a condition of servitude through nonviolent coercion." Victims of Trafficking and Violence Protection Act of 2000 § 102(b)(13). "Serious harm" is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589(c)(2).

"The linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her." *Dann*, 652 F.3d at 1170.

In other words, the "linchpin" of this analysis is whether the employer intended to cause the victim to believe they would suffer serious harm. Thus, to prove a violation to the TVPRA, each Plaintiff must present sufficient evidence to show Stemilt, at a corporate level, "*knowingly* or *intentionally* engaged in actions or made threats that were sufficiently serious to compel a reasonable person in [plaintiff's] position to *remain* in [their] employ, against [the plaintiff's] will and in order to avoid such threats of harm, when [they] otherwise would have left." *See Muchira*, 850 F.3d at 620.

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

Analysis of the cases interpreting these requirements illustrate the severity of the harm necessary to prove a violation. *See, e.g., United States v. Callahan*, 801 F.3d 606, 620 (2005) (observing that forced-labor victims typically face circumstances such as "squalid living conditions, extreme isolation, threats of legal process, and violence"). Courts dismiss claims that do not rise to this standard. *See, e.g., Carter v. Paschall Trucking Lines, Inc.*, 2023 WL 359559 (W.D. Ky. Jan. 23, 2023); *Muchira*, 850 F.3d at 620.

Plaintiffs position this case as analogous to the treatment of H-2A workers in *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671 (W.D. Wash. 2018)—even going so far as to borrow allegations from that case that have no basis here. For example, Plaintiffs cut and paste an allegation from *Sarbanand* in claiming that Stemilt had a policy or practice of depriving guest workers of medical care and threatening those who sought treatment. *Gomez Garcia*, ECF No. 38 ¶ 60. As Plaintiffs are well aware, one of many things distinguishing Stemilt as an agricultural employer is it provides free health care for work-related injuries, as well as basic care and first aid, free primary care, free prescriptions, and free health care for all employees and their families. SMF 64-73. To reinforce these benefits, they are described in each H-2A workers' contract and emphasized through training—multiple H-2A workers have testified they enjoyed these benefits in 2017 and gladly returned to work for Stemilt every year since. *See Gomez Garcia,* ECF No. 102-6 to -17. Plaintiffs also base

Count Three on the borrowed *Sarbanand* allegation that Stemilt "threatened to blacklist workers who complained in order to maintain the continued labor of its H-2A workforce." ECF No. 103 ¶ 374. No evidence supports or relates to this cut-and-paste allegation.

As the following sections make clear, Stemilt is not Sarbanand, and this case is neither that case nor any of the other referenced human trafficking cases.

### 3. Stemilt Did Not Obtain Plaintiffs' Labor Using Force, Threats, or Any Other Improper Method

The TVPRA prohibits an employer from obtaining another's labor "by means of" force, serious harm, threats, or an improper scheme. That standard is a problem for Plaintiffs because they do not present evidence Stemilt knowingly "obtained" their labor unlawfully or improperly.

Here, it is undisputed each Plaintiff voluntarily worked for Stemilt under a contract; some Plaintiffs voluntarily returned to Stemilt for several contracts and others have testified they would gladly return.[4] SMF 42-43, 278. Under that contract,

---

[4] Plaintiffs Bautista Salinas, Padilla Plascencia, and Gallegos Gonzalez stayed through the end of the contract and would have been welcome to return to Stemilt in 2018. Plaintiffs Padilla Plascencia and Gallegos Gonzalez chose instead to join the more than 100 H-2A workers who worked for Stemilt in 2017 and worked for

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 24
052556.008 \ 103483716v6

Stemilt provided their housing, meals, transportation, medical care, and other benefits at no cost to them. SMF 12. Each Plaintiff worked the hours promised and received at least (and often more than) the wages promised. SMF 13-14, *see also* SMF 191. Stemilt placed no restrictions on any worker's freedom of movement—many Plaintiffs owned their own vehicles and testified they used them without restriction or interference. *See* SMF 79. Plaintiffs had unfettered access to personal cell phones, the Internet, and legal services. SMF 80-82. The only restrictions on Plaintiffs, such as the requirement they work solely for Stemilt and return to their country of origin at the end of their employment, were imposed by the United States as a condition of their work permits and visa status, not by Stemilt. *Compare* Williams Decl. Ex. B, *with Ratha v. Phatthana Seafood Co.*, 2017 WL 8292922, at *8 (C.D. Cal. Dec. 21, 2017) (dismissing TVPA claims and finding that alleged restraints were caused by plaintiffs' work permits and visa and immigration status), *aff'd*, 26 F.4th 1029, and at 35 F.4th 1159 (9th Cir. 2022)

---

Evergreen Ag Services in 2018. SMF 271, 273 Like many H-2A workers, 2017 was the only time Plaintiff Bautista Salinas worked in commercial agriculture, as he used his earnings to pursue higher education in Europe. Monahan Decl. Ex. 9 at 15:7-16:6; SMF 236.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 25
052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

Plaintiffs present no evidence disputing these facts. Their allegation, instead, is they were required to work at a faster pace than their subjective interpretation of what they bargained for and were threatened with adverse employment (and related immigration) consequences if they failed to meet those requirements. *See* ECF No. 134 (alleging Stemilt imposed a three-bin productivity standard). Understanding what this allegation is, and what it is not, requires some unboxing.

As may be apparent from part I(C)(2)(b), *supra*, this is not the typical trafficking case. *Compare with, e.g., Muchira*, 850 F.3d at 619-22. No Plaintiff alleges he was required to provide any kind of labor services above and beyond or outside the scope of his contract. For example, no Plaintiff alleges Stemilt required him to perform any task not set forth in his contract or work any hours beyond those stated in his contract. *Compare* ECF No. 103, *with Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1151-54 (9th Cir. 2022) (describing bait-and-switch where defendant misused TN visa to lure professional workers and forced them to work as general dairy laborers and milkers). Similarly, none disputes he would need to pick more than three bins of every single variety to qualify for the contractual piece rate incentives he accepted and that motivated him to work for Stemilt in the first place. *See* SMF 25 (workers would need to pick four bins of Fuji apples, five bins of Galas, Honeycrisp, or Pink Lady's, and six bins of Reds to qualify for the piece rate incentives under their contract). To the extent any Plaintiff worked at this faster pace,

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 26
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1    he earned more under the contract as the benefit of his increased effort or skill.

2    (Indeed, Stemilt voluntarily and repeatedly increased its rate of compensation to

3    encourage workers to pick at a more consistent pace—to several Plaintiff's benefit).

4    *See, e.g.,* SMF 128, 134, Williams Decl. Ex. H.

5        Rather than argue that they were unlawfully compelled to provide exceptional

6    or uncompensated labor, Plaintiffs instead complain Stemilt "forced" their labor by

7    quantifying and (occasionally) enforcing minimum expectations for each worker's

8    pace, effort, and capability. Setting aside the fact Plaintiffs agreed to perform certain

9    minimal functions as a term or condition of their employment under the contract (as

10   the specifics of that agreement are an issue of fact, *see* ECF No. 161, summary

11   judgment is warranted because Plaintiffs cannot show Stemilt compelled their labor

12   using any unlawful or improper means.

13   **a.**   **Plaintiffs Do Not Show an Unlawful Standard or Plan to Obtain Labor**

14        That Stemilt did not actually impose a quota or production requirement is, at

15   this point, beyond dispute. The record shows more than 13,000 instances where

16   workers failed to meet the alleged quota in September and October 2017. SMF 109.

17   There were only 677 disciplinary notices issues during the entire harvest for any

18   reason, including housing violations, safety violations, drugs, threats, bruising fruit,

19   or other immaterial matters. SMF 110. The record confirms many H-2A workers

20   consistently failed to meet the alleged quota and received no warnings or other action

21

STEMILT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT - 27
052556.008 \ 103483716v6

1  under Stemilt's progressive disciplinary policy. SMF 111. Others, such as Plaintiff

2  Gomez Rivera, received additional training after Stemilt identified he was

3  consistently unable to keep pace with his peers. *See* SMF 217-22.

4       Plaintiffs also fail to show Stemilt engaged in an intentional scheme or plan

5  of threatening H- 2A workers with progressive discipline, termination, deportation,

6  and blacklisting in order to coerce them to continue working. As this Court is aware,

7  Robin Graham's September 22, 2017, email is the only evidence of an alleged policy

8  establishing what Plaintiffs argue was an unlawful production standard. That email,

9  which applied equally to H-2A and local workers, clearly did not have the effect of

10  establishing an enforced production requirement: as briefed at ECF No. 142, there

11  were thousands of instances where workers failed to meet the alleged quotas, even

12  at the locations Plaintiffs self-selected as examples, and only 51 total instances of

13  discipline. *See* ECF No. 142 at 8-9. Nor did the email affect Stemilt's overall

14  approach to progressive discipline: Stemilt supervisors assessed 677 total warnings

15  during the 2017 apple harvest, 322 in the 31 days before the email and 355 in the 40

16  after. SMF 111. This email did not impose a fixed production quota and it did not

17  set forth a plan, policy, of scheme for forced labor.

18       Neither Ms. Graham's email, nor any other document, record, or testimony,

19  says anything about "threats" or "blacklisting." *Id.* Quite the opposite: Stemilt

20  expressly directed its supervisors to keep any meetings with workers regarding their

21

production "at a coaching level" and vested its Area Managers with discretion over whether and to what extent a three-bin metric accurately represented a fair effort for any particular picker working a particular block on a particular day—including whether orchard conditions even allowed the "policy" to be adopted. *Id.* This is not evidence of the "serious trafficking and threats of dire consequences" that Congress intended to reach through the TVPA.

Even if this Court were to indulge Plaintiffs' theory, they still offer no explanation for how an alleged policy containing a 'requirement' that the Department of Labor and Industries observed to be "normal and common" in 2016 constitutes criminal human trafficking in 2017. *See Gomez Garcia,* ECF No. 188-2 (ESD Agricultural Wage and Practice Survey Report finding production standards "normal and common" for certain varieties of apples in 2015 and 2016). And again, the alleged policy applied equally to local and H-2A workers, which means Plaintiffs are asserting, without authority, that a facially neutral, lawful policy with a disparate effect on foreign guest workers satisfies the scienter requirement of 18 U.S.C. § 1589(a). This is insufficient.

Plaintiffs fail to show Stemilt knowingly implemented an unlawful scheme, plan, or pattern with the criminal intent to force any Plaintiff's labor. Count Two must be dismissed.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 29
052556.008 \ 103483716v6

**b.    Plaintiffs Do Not Establish That Stemilt Abused Any Law or Threatened Any Plaintiff With Serious Harm To Illegally Obtain Their Labor**

Rather than present evidence of an intentional scheme or plan by Stemilt to obtain any Plaintiff's labor "by means of" force, serious harm, threats, or an abuse of the legal process, some Plaintiffs allege certain crew bosses individually "threatened"" and "pressured" them to work faster. *See, e.g.,* SMF 230.1 ("Jose" told him to bring the fruit down quickly and to fill many bins or he would be fired and/or not rehired for the following season); SMF 163.1 (at 33-34) (crew bosses put pressure on him to pick a certain number of bins per day); SMF 201.1 (Rafael demanded a certain number of bins and this put pressure on him). Other Plaintiffs repeat these generic allegations but cannot identify a speaking agent: SMF 212 (unidentified coworkers told him he would be fired if he received three warnings, but he did not hear that from a crew boss and could not remember the name of his crew boss); 194.1 (Plaintiff Rodriguez Llerenas heard from "an American" and "the person checking the bins"). These workers cannot sustain a claim.

For the purposes of summary judgment only, Stemilt concedes that Plaintiffs Gilberto Gomez Garcia, Octavio Gomez Garcia, Gomez Rivera, Padilla Plascencia, Mendoza Anguiana, Perez Zepeda, and Mendez Franco have alleged individual supervisors threatened them with progressive discipline, up to and including termination, for workers who failed to perform the essential functions of their job.

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

*See, e.g.,* SMF 122.2 (supervisors "threatened" him and his coworkers by "telling us that they were going to be giving us warnings and warnings if we don't do the things right."); 174.2 (alleging Anna Guerrero told him and others "if you guys don't at least do the minimum, you guys will be fired and sent to Mexico.") Stemilt acknowledges for the purpose of this motion that isolated crew leads, support staff, and, allegedly, Mssrs. Peregrino and Estrada, may have accurately described immigration or contractual consequences for any worker who failed to complete their contract. These acknowledgements do not make Stemilt a "perpetrator" of human trafficking or forced labor; they simply make Stemilt an advocate for services it believed it was entitled to under the Clearance Order.

As an initial matter, these supervisors' isolated statements cannot be imputed to Stemilt. Under Washington law, harassment may be imputed to an employer in one of two ways. *Davis v. Fred's Appliances, Inc.*, 171 Wn. App. 348, 362, 287 P.3d 51 (2012) (citing *Glasgow v. Georgia-Pac. Corp.*, 103 Wn.2d 401, 407, 693 P.3d 708 (1985)). First, it may be imputed to the employer if the harasser is an owner, partner, corporate officer, or manager. *Id.* Second, it may be imputed to the employer if the harasser is the plaintiff's supervisor or co-worker if the employer "authorized, knew, or should have known of the harassment and . . . failed to take reasonably prompt and adequate corrective action." *Glasgow,* 103 Wn.2d at 407*; see Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 854-56 991 P.2d 1182 (2000) (to

automatically impute harassment to an employer, the manager's rank in the company's hierarchy must be high enough that the manager is the employer's alter ego); *Henningsen v. Worldcom, Inc.*, 102 Wn. App. 828, 9 P.3d 948 (2000) ("a manager is something more than a supervisor"). None of the individuals identified by any Plaintiff had any authority to hire or fire any worker, or independent authority to impose discipline on any worker. *See* SMF 118, 158, 171, 2017; *see also* SMF 106 (instructing area managers to review any write-ups). Their alleged statements cannot be imputed to Stemilt.

No Plaintiff alleges any owner, partner, corporate officer, or senior manager threatened them. None presents evidence these categories of Stemilt employees or agents authorized any threats or took any action to force their labor. Indeed, Stemilt's owner, corporate officers, and senior management uniformly testified they would have fired any employee found to be threatening a worker. *See, e.g.*, Graham Decl. ¶ 46, Monahan Decl. Ex. 25 at 45:12-19; *see also* Mathison Decl. ¶ 9. Plaintiffs do not present evidence showing Stemilt knew or should have known that any employee, crew boss, or supervisor was making any statement with the intent to unlawfully compel Plaintiffs' labor.

Further, these alleged statements do not constitute criminal forced labor under the statute. In applying the TVPRA, the court must distinguish between "improper threats and coercion and permissible warnings of adverse but legitimate

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 32
052556.008 \ 103483716v6

consequences." *Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) (quoting *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004), *judgment vacated on other grounds*, 545 U.S. 1101 (2005)); *see also Dann*, 652 F.3d at 1170 (Act aims at serious trafficking and threats of dire consequences).

Stemilt acknowledges the threat of deportation, when viewed in isolation, "can constitute serious harm to an immigrant within the meaning of the forced labor statute." *United States v. Rivera*, 2012 WL 2339318, at *5 (E.D.N.Y. June 19, 2012); *see also United States v. Kozminski*, 487 U.S. 931, 948 (1988). However, an employer is not automatically guilty of criminal human trafficking by acknowledging the adverse immigration consequences that might befall an employee who is terminated: "the TVPA was not intended to completely muzzle employers or prohibit them from mentioning certain legal realities." *Camayo v. John Peroulis & Sons Sheep, Inc.*, 2012 WL 4359086, at *2 n.6 (D. Colo. Sept. 24, 2012). An "employer's comments about immigration consequences that could occur[ ] do not by themselves constitute an abuse of the legal process; rather, an employee is obligated to show that the threatened use of the legal process is a **misuse** of that process." *Id.* at *4 (citing *Alvarado v. Universidad Carlos Albizu*, 2010 WL 3385345, at *3 (S.D. Fla. Aug. 25, 2010)) (emphasis in original) (collecting cases)). "[T]he question of whether statements (and actions) by an employer [constitute an abuse of the legal process] must be viewed in light of all the surrounding

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 33
052556.008 \ 103483716v6

circumstances." *Camayo*, *supra* at *2 n.6; *compare with Vazquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (in evaluating hostile work environment claims under Title VII, the Court must look to all of the circumstances, including the frequency, severity, and nature of the alleged conduct).

The circumstances here merit dismissal of these claims. In the Second Clearance Order, each Plaintiff agreed they would be subject to Stemilt's "progressive discipline standards, including verbal instruction, written warnings, time off . . . [up to and including] termination" if they failed to perform their duties in a timely and proficient manner. *See* SMF 12. The Clearance Order also included Stemilt's general no-rehire policy for any worker who failed to complete the contract, and each Plaintiff knew their employment with Stemilt was a condition of their visa (and, consequently, their ability to remain in the United States). *E.g.,* SMF 5, 12.8. Plaintiffs' testimony of these crew leads' and supervisor's alleged threats, although harsh, falls within the realities of the Second Clearance Order: *See*, e.g., Monahan Decl. Ex. 1 at 72:9-73:15 (alleging that, in a conversation with Mr. Estrada, he was presented with the options of continuing with Stemilt or returning to Mexico).

Each Plaintiff was required to meet the basic requirements of their position and complete their contract if they wished to return. Even if proved, informing

workers of the real, albeit harsh, realities of their agreement does not rise to the level of human trafficking. *Accord Headley*, 687 F.3d at 1180.

**c.    Plaintiffs Present No Evidence That Stemilt's Alleged Unlawful Acts Caused Them to Provide Labor**

Should this Court find that the alleged statements by isolated crew leads creates a genuine issue of material fact as to the Plaintiffs discussed at part II(C)(3)(b), summary judgment is still warranted on Count Two because none offer evidence that these alleged actions caused them to remain at Stemilt or to perform any labor that they had not previously agreed to. *See Martínez-Rodríguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022) (Section 1589(a) plaintiff must show that pressure resulting from unlawful abuse caused the plaintiff to provide labor).

Several Plaintiffs testified that Stemilt's expectations had zero effect on their performance, productivity, or effort. *See Gomez Garcia,* ECF No. 98-3 at 24:2-25, 40:17-25 (testifying he put in a full effort regardless of whether he was told to pick slower or faster and he would have worked just as hard without the pressure he alleges was placed upon him); *Gomez Garcia,* ECF No. 102-2 at 58:14-24 (testifying he put in a full effort every day and in doing so was able to meet both Stemilt's quality and quantity expectations; *Gomez Garcia,* ECF No. 98-2 at 132:17-134:24 (testifying he always worked hard and only received a single verbal warning the entire time he worked at Stemilt).

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 35
052556.008 \ 103483716v6

**STOKES LAWRENCE
VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

The remaining Plaintiffs testified that Stemilt's "pressures" did not compel labor but instead (i) caused them to pick slower and/or (ii) caused or contributed to their decision to abandon their contracts and leave Stemilt's employment early. *See, e.g., Gomez Garcia,* ECF No. 98-2 at 31:8-22 (pressure caused him to pick more slowly); SMF *Gomez Garcia,* ECF 98-1 at 31:12-13 (testifying he abandoned his employment with Stemilt "because of the pressure put on me."); ECF No. 102-3 at 46:4-19 (quit working for Stemilt because of "[t]he pressure we were under by those men"). And the record is clear these Plaintiffs did abandon their employment, using their own vehicles, without incident or coercion. *Compare* SMF 241-43, 264-65, *with Headley*, 687 F.3d at 1179-80 (affirming dismissal of TVPA claims, finding that Plaintiffs voluntarily worked for a variety of reasons and voluntarily left and stopped providing labor due to the constraints they complained about). As Plaintiff Octavio Gomez Garcia testified:

> **Q:** You said earlier that it was your preference, you kept working hard up through your very last day because it was your preference when you left you wanted to quit and you did not want to be fired; is that correct?
> **A:** Yes.
> **Q:** And did you feel that you were able to do that of your own free will, to quit and to leave work at Stemilt?
> **A:** Well, yes, because at the end of the day, I was the worker.
> **Q:** And other than Ruben asking that you reconsider, did anybody else at Stemilt try to stop you from leaving and going home?
> **A:** No.

*Gomez Garcia*, ECF No. 98-3 at 93:13-94:2.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 36
052556.008 \ 103483716v6

This brings us back to the *Sarbanand* comparison. The *Sarbanand* plaintiffs were allegedly subjected to brutal conditions and provided with poor quality, inadequate food. 329 F.R.D. 671, 681 (W.D. Wash. 2018). A worker died. *Id.* When his coworkers protested the conditions that allegedly led to his death, the employer (i) fired them, (ii) told them to gather their belongings and leave the country within the hour, and (iii) threatened to call the police and immigration officials. *Id.* at 681-82. These protesting workers did not receive their final paychecks and were forced to leave the country without payment for their work. *Id.* The remaining workers were intimidated into completing their contracts. *See id.*

Here, the record speaks for itself as to Stemilt's treatment, facilities, and commitment to its workers. The vast majority of Stemilt's 2017 workforce—93% of orchard employees—stated their belief that they were treated with respect by their supervisors. *See* Mathison Decl. ¶¶ 4-5. They back up this belief with their actions, as more than 70% of Stemilt's 2017 H-2A piece rate workers volunteered to return in 2018—a rate that is consistent with the number of workers who return in most years. SMF 277.

Eight of the remaining Plaintiffs abandoned their employment in October 2017, including several who accepted employment with Evergreen Ag Services, LLC and Elizabeth Hernandez (and some who recruited for these entities while still working at Stemilt). *See* SMF 241-43, 263. The record also shows Stemilt took no

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 37
052556.008 \ 103483716v6

unlawful action to maintain any Plaintiff's labor or services; indeed, they were free to leave. Some of these Plaintiffs spoke with their supervisors and informed them that they would be leaving; these Plaintiffs' testimony is that their supervisor generally told them they were a good worker and asked them to reconsider. SMF 265. These Plaintiffs also admit Stemilt provided them with their recently processed work permits and visas to facilitate their transition away from Stemilt.[5] *Id.*; *see also Gomez Garcia*, ECF No. 306 at 9-10.

Other Plaintiffs simply vanished. *See* Williams Decl. ¶ 62. When Stemilt discovered these individuals working for a competing farm, Plaintiffs admit Stemilt personnel simply asked them to return and promised to listen to their concerns and work to remedy them. SMF 255-62. These Plaintiffs confirmed that, when those workers elected not to return, Stemilt took no further action. Plaintiffs cannot show

---

[5] Three Plaintiffs completed their contracts: Plaintiffs Gallegos Gonzalez, Bautista Salinas, and Padilla Plascencia. SMF 121, 169, 235. Though they were invited to return to Stemilt the following season, none of them did. SMF 236, 271, 273. Plaintiff Gallegos Gonzalez and Padilla Plascencia instead worked for Evergreen alongside Plaintiffs Mendez Perez, Mendez Franco, Gilberto Gomez Garcia, Octavio Gomez Garcia, and Vargas Leyva in 2018.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 38
052556.008 \ 103483716v6

Stemilt forcibly maintained or compelled their labor under the TVPRA, and their claims at Counts Two, Three, and Count Four must be dismissed.

**D.     This is a Garden Variety, Employment-Breach of Contract Case**

Despite the headline-seeking, incendiary labels of alien discrimination and human trafficking, Plaintiffs' complaints and claims in this case are most coherently stated as garden variety, state law breach of contract claims. Plaintiffs allege Stemilt adopted specific productivity measures and imposed them on Plaintiffs as a production requirement or quota in violation of the Clearance Orders. *See* ECF No. 134. Stemilt unequivocally rejects that allegation and maintains its actions held Plaintiffs to their end of the bargain. *See* ECF No. 142. Summary judgment is warranted here because the evidence confirms Stemilt upheld its obligations under the contract while Plaintiffs materially breached their own.

Parties claiming breach of contract must establish the defendant's material breach, their own performance, and damages resulting from that material breach. *Lehrer v. State Dep't of Social & Health Servs.*, 101 Wn. App. 509, 516-17, 5 P.3d 722 (2000). If a contract requires performance by both parties, the party claiming nonperformance of the other must first establish its own performance. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). Because this case involves an exchange of promises and mutual obligations, it is essential to understand the promises each party made.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 39
052556.008 \ 103483716v6

As set forth in the Clearance Order, Stemilt promised to provide guest workers the opportunity for work, pay them at or above the rates fixed in the Clearance Order for their labor across a variety of authorized activities, house them free of charge, provide them with transportation, including transportation to and from Mexico to Stemilt's orchards in Central Washington, amongst other things.

In exchange, Plaintiffs agreed, *inter alia*, to provide harvest labor from August 17 until November 15, 2017, "work at a sustained pace and make bona fide efforts to work efficiently and consistently" on the tasks set forth in the contract, to perform their assigned tasks in a manner consistent with their supervisors' instructions and the industry standards, and to refrain from engaging in misconduct. SMF 12. If a Plaintiff failed to meet these expectations, they agreed Stemilt could correct them, train them, discipline them, or terminate them. *See* Williams Decl. Ex. B. Plaintiffs further agreed they would be ineligible for rehire and disqualified from future employment with Stemilt if they failed to complete the contract. SMF 12.8.

1.    **Stemilt Performed its Obligations Under the Contract**

Consistent with its obligations under the parties' agreement, Stemilt provided regular work on the tasks identified in the Second Clearance Order, timely paid all wages due, and ensured those wages complied with—or indeed, exceeded, the rates set forth in the Second Clearance Order. Stemilt also provided compliant housing,

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 40
052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

time off with no restrictions, and more transportation than the contract required. The record is Stemilt fully complied with each of its contractual obligations.

**a.    Stemilt Consistently and Voluntarily Paid Plaintiffs More Than They Bargained For**

Plaintiffs' Second Amended Complaint includes the allegation Stemilt "breached its H-2A contract when it did not pay Plaintiffs the piece rates enumerated in the Department of Labor ETA Form 790." ECF No. 103, ¶ 378. Plaintiffs have never identified a single instance where Stemilt failed to pay an H-2A worker either (a) the AEWR or (b) the applicable piece rate, whichever was higher for their work that day. The allegation is baseless.

It is undisputed Stemilt consistently paid Plaintiffs more than the agreed piece rates—and never less. The Second Clearance Order included piece rates for different varieties of apples and other tasks. *See* Williams Decl. Ex. B. These contractual rates for harvesting apples ranged from $20 to $28 per bin, depending on the variety. *Id.* Stemilt voluntarily increased these piece rates several times during the harvest, paying its workers, including the Plaintiffs who earned the piece rate incentive, more than they had agreed to work for.

Stemilt's payment of higher wages to Plaintiffs benefitted Plaintiffs. The record is full of examples where Plaintiffs worked at a higher rate than the standard piece rates set forth in the Second Clearance Order. For some workers motivated by

the piece rate incentive, this resulted in real gains. For example, Plaintiff Padilla Plascencia saw his daily wage increase from $212.50 to $340.00, exclusively because Stemilt voluntarily paid him at a higher rate. SMF 128. There are zero instances where Stemilt paid any Plaintiff less than the agreed, required rates. This allegation must be dismissed as a matter of law.

**b.    All Actions Towards Plaintiffs Were Consistent with Stemilt's Progressive Disciplinary Policy and the Plain Language of the Contract**

As briefed at part III(C), *supra*, and ECF No. 142, Stemilt did not impose a productivity quota on any worker, and only one of the six individuals that are the subject of this motion experienced any adverse employment action related to their production: Plaintiff Gomez Rivera, whose ranch manager offered him additional training. None of these individuals describe a single orchard experience in 2017 falling outside the terms and conditions of the Second Clearance Order, they fail to establish breach of contract as a matter of law.

Plaintiff Sandro Vargas Leyva was an experienced picker who picked at an average pace of nearly 5 bins in an eight-hour shift. Williams Decl. Ex. H. Though this was his average pace, he picked at a pace of less than 3 bins in an eight-hour period on 10 separate occasions. SMF 190. Plaintiff Vargas Leyva was never disciplined or written up for any orchard activities during the 2017 apple harvest. SMF 192.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 42
052556.008 \ 103483716v6

Plaintiffs Mendez Franco and Martinez Perez[6] allege they received warnings for not picking quickly enough, but present nothing supporting those allegations. *See* SMF 179, Williams Decl. ¶ 58(e). Such bare, conclusory allegations do not support their claims. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 779 (9th Cir. 2010) (at summary judgment "the court will not presume that general allegations embrace more specific facts to support the claim."). These allegations are also inadmissible speculation and double hearsay from an unidentified speaking agent; they are wholly insufficient. *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003).

Plaintiff Gilberto Gomez Garcia received no discipline related to any orchard activities, though he was disciplined for violating the housing rules and investigated

---

[6] Though there is no evidence showing that Plaintiff Martinez Perez received a warning or write up under Stemilt's disciplinary policy, Stemilt's payroll records do show that it reassigned him to a pruning crew after he consistently failed to keep pace with the remainder of his crew. *See* SMF 213. Plaintiff Martinez Perez does not allege Stemilt breached his contract by reassigning him to another task under the Second Clearance Order. *See* Williams Decl. Ex. B ("[w]orkers are recruited to work at Stemilt Ag Services LLC, and will be assigned as needed to meet the needs of Association member.").

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 43
052556.008 \ 103483716v6

**STOKES LAWRENCE VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

following an allegation he had taken inappropriate photos of a female supervisor. SMF 135. He was also spoken to about bruising fruit and instructed to work more slowly. *Id.* He does not allege any of these actions violated his contract.

Stemilt addressed Plaintiff Gomez Rivera's experience at length in its Opposition to Summary Judgment, ECF No. 142 at 2:13-5:7. He, too, fails to support a claim for breach of contract; complaining only that he received training to improve his performance after several weeks of lagging behind his peers. *See* SMF 222 This is exactly what Stemilt promised to do in the Second Clearance Order:

> If the employee is consistently unable to perform their duties in a timely and proficient manner consistent with applicable industry standards, considering all factors, they will be provided training in according with [Stemilt's] progressive discipline standards, including written warnings, time off, or other coaching or instruction to teach the worker to work more efficiently.

*See* Williams Decl. Ex. B. He does not explain how his selection for training breached his agreement. Plaintiff Gomez Rivera's claim must be dismissed.

Plaintiff Rodriguez Llerenas alleges he was "illegally fired" for an alleged "failure to meet production standards." ECF No. 103, ¶ 125. While it is true Mr. Rodriguez Llerenas was an objectively poor picker who had trouble keeping pace with his peers, nothing supports that allegation. *See* SMF 197. He testified he was fired by an unidentified woman after receiving multiple warnings; however, the only warning Stemilt has in his file is for picking too many green apples and

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 44
052556.008 \ 103483716v6

bruising. SMF 195, 199. He also testified that other H-2A workers were "fired," by which he explained meant they "just left on [their] own . . . [because they] wanted to work for another company." Monahan Decl. Ex. 5 at 78:4-79:8.  While Stemilt might have been entitled to discipline and ultimately terminate Plaintiff Rodriguez Llerenas for failing to keep pace with his crew or meet their quality standards, there is no evidence it did so. Because he fails to submit competent evidence in support of his claim, his claim must be dismissed.

## 2. Plaintiffs Do Not Show Damages for this Alleged Breach

Finally, these Plaintiffs' claims fail because they cannot establish damages. "[I]n suits for damages only, a court may dismiss a breach of contract action if damages have not been suffered." *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 754, 162 P.3d 1153 (2007). "Mere proof that there was a breach of contract, without more, will not support a verdict in favor of a plaintiff, even for nominal damages." *Ketchum v. Albertson Bulb Gardens, Inc.*, 142 Wash. 134, 139, 252 P. 523 (1927).

There are two reasons Plaintiffs cannot show damages. First, as explained above, several Plaintiffs testified Stemilt's alleged expectations and standards did not cause them to put forth a greater effort or change their approach to work. Second, as illustrated below, Stemilt's corrective training and the agreed piece rate incentives benefitted any Plaintiff who chose to put forth a consistently better effort.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 45
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

The record is clear: when certain Plaintiffs repeatedly failed to reach the various "minimums" that they alleged, they were provided training and instruction that improved their performance. When Plaintiffs exceeded the alleged "minimums", they earned additional pay at or above the rates they agreed to in accepting the Second Clearance Order. *E.g.,* SMF 128. Rather than seeing this as a material breach of their agreement, some Plaintiffs took advantage of this opportunity and earned as much as $340 in an eight-hour day—more than triple the amount they would have made under the AEWR. *See id.* This does not show damages as a matter of law.

**3.    Plaintiffs Mendez Perez, Mendez Franco, Gilberto and Octavio Gomez Garcia, Gomez Rivera, and Vargas Leyva Breached By Abandoning their Contracts**

**a.    Plaintiffs' Independent, Material Breach Defeats Their Claims**

Summary judgement is also warranted as to each Plaintiff because they failed to meet their obligations to Stemilt. In a bilateral contract, "[e]ach party is bound by his promise to the other." *Ebling v. Gove's Cove, Inc.*, 34 Wash. App. 495, 499 (1983) (citing *Cook v. Johnson*, 37 Wn.2d 19, 23 (1950)). Each Plaintiff's unjustified failure to complete the contract defeats their claim.

It is undisputed that Plaintiffs Mendez Perez, Mendez Franco, Gilberto Gomez Garcia, Gomez Rivera, and Vargas Leyva each breached their contract with Stemilt by abandoning their employment in the middle of the harvest, breaking their

promise to work until either the end of harvest or November 15, 2017, the date the Second Clearance Order (and their individual work visas) expired. SMF 243, 264. Specifically, Plaintiffs Martinez Perez and Gomez Rivera abandoned their employment with Stemilt on October 18, 2017 and began work for Evergreen Agricultural Services the following day. SMF 247. Plaintiffs Gilberto Gomez Garcia, Mendez Franco, and Vargas Leyva each left that same week. SMF 264. Their failure to complete the harvest was a material breach of their contract.

**b.** **Plaintiffs Were Not Justified in Abandoning Their Contracts and Cannot Resurrect Their Claims By Alleging Constructive Discharge**

Each of these Plaintiffs worked for Evergreen Agricultural Services, LLC after leaving Stemilt. *See* SMF 243, 268-74. Some began working immediately and others a few weeks later, as they had abandoned their employment after Columbia Fruit discovered Evergreen's illegal activities and terminated its agreement with that contractor. The facts surrounding this transition are not the subject of a genuine dispute: more than 30 Stemilt employees, including Plaintiff Gomez Rivera and Jose Ramirez Garcia met with Elizabeth Hernandez and one of Evergreen's owners, Abraham Larios, at a restaurant in Kennewick the night after Stemilt terminated Ms. Hernandez's employment. SMF 241. Ms. Hernandez introduced the workers to Mr. Larios, who offered them employment. SMF 241-42. Several of these workers, including Jose Rodriguez Garcia and Plaintiffs Rivera Gomez and Martinez Perez

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 47
052556.008 \ 103483716v6

**STOKES LAWRENCE**
**VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

immediately abandoned their employment to work for Evergreen; and others returned to Stemilt to recruit for Ms. Hernandez. SMF 243; *See* Monahan Decl. Ex. 5 at 80:17-82:10. In total, Evergreen employed 108 former Stemilt workers in 2018; these workers were recruited by or on behalf of Ms. Hernandez. SMF 275.

Despite this, Plaintiffs allege they did not abandon their contracts but were instead constructively discharged. The evidence does not support these allegations.

To establish a claim of constructive discharge, each Plaintiff must prove (i) Stemilt intentionally made working conditions intolerable, (ii) a reasonable person in their position would be forced to quit, (iii) they did in fact quit because of the conditions and not for any other reason, and (iv) they suffered damages as a result of being forced to quit. *Washington v. Boeing Co.*, 105 Wn. App. 1, 16, 19 P.3d 1041 (2000). A resignation is presumed to be voluntary, and the employee must present evidence to rebut that presumption. *Id.*

Plaintiffs Martinez Perez's and Gomez Rivera's claim of constructive discharged "as a result of Stemilt's threats and coercion to complete the daily production standards" must be dismissed out of hand. ECF No. 103, ¶ 269; ECF No. 339, ¶ 121. These witnesses testified they met with Elizabeth Hernandez and Abraham Larios while still employed by Stemilt and left to work at Evergreen Agricultural Services; they started the following day. SMF 243-44. They quit for "another reason"—to pursue work for another employer—and cannot establish they

1    were constructively discharged as a matter of law. Even if their allegations were true,

2    and they did indeed quit because of their subjective belief that they were being

3    pushed too hard to pick more apples, Stemilt's alleged efforts to complete its harvest

4    fall far short of the misconduct Plaintiffs would need to show to establish it

5    deliberately and intentionally made their work intolerable.

6         The remaining Plaintiffs' claims fare no better. Though each alleges their

7    working conditions were "intolerable," the evidence confirms they simply

8    abandoned their contracts.

9         None present the evidence necessary to establish the intolerable element,

10   which requires both proof of intent and either aggravated circumstances or a

11   continuous pattern of discriminatory treatment. *Hill v. GTE Directories Sales Corp.*,

12   71 Wn. App. 132, 143, 856 P.2d 746 (1993) (plaintiff must show employer

13   "deliberately made conditions intolerable because of" discriminatory animus).

14   Plaintiff Gilberto Gomez Garcia testified he abandoned his employment with Stemilt

15   "because of the pressure put on me." *Gomez Garcia,* ECF 98-1 at 31:12-13; (quit

16   working for Stemilt because of "[t]he pressure we were under by those men").

17   Plaintiff Fernando Mendez Franco testified he "could no longer stand the pressure"

18   because "they were demanding too much, and the reality was it could not be done."

19   Monahan Decl. Ex. 16 at 22:1-8. Plaintiff Octavio Gomez Garcia testified, "I'm the

20   one that quit working because I just could no longer take the pressure." ECF No. 98-

21   STEMILT'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT - 49
     052556.008 \ 103483716v6

3 at 46:2-5. And Plaintiff Sandro Vargas Leyva testified "[t]he pressure we were under by those men" was the reason he abandoned his contract. ECF No. 102-3 at 46:4-19. But Plaintiffs cannot establish this "pressure" amounted to aggravating circumstances or a pattern of discriminatory treatment. "An employee's frustration, and even receipts of direct or indirect negative remarks, is not enough to show intolerable working conditions." *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 149, 265 P.3d 971 (2011). Plaintiffs' bare allegations of isolated incidents of "pressure" to perform the tasks set forth in the Second Clearance Order merely establishes that Plaintiffs were unhappy with their employment at Stemilt. Such unhappiness or dissatisfaction does not establish intolerable working conditions and in turn cannot prove constructive discharge as a matter of law.

Nor may this alleged misconduct here be imputed to Stemilt. As explained at part I(C)(3)(b), *supra*, Washington employers are not liable for all allegations of harassment. Harassment may only be imputed employer if the harasser is an owner, partner, corporate officer, or manager or if the harasser is the plaintiff's supervisor or co-worker and the employer "authorized, knew, or should have known of the harassment and . . . failed to take reasonably prompt and adequate corrective action. *See Davis v. Fred's Appliance, Inc.*, 171 Wn. App. 348, 362, 287 P.3d 51 (2012) (citing *Glasgow*, 103 Wn.2d at 407).

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 50
052556.008 \ 103483716v6

**STOKES LAWRENCE
VELIKANJE MOORE & SHORE**
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

Plaintiffs Martinez Perez, Octavio Gomez Garcia, and Mendez Franco's alleged pressure cannot be imputed to Stemilt as a matter of law. For example, Plaintiff Fernando Martinez Perez alleges his crew boss Victor Silva put pressure on him. SMF 212. Plaintiff Octavio Gomez Garcia asserts that his crew boss Carlos,[7] threatened that if he did not pick three bins he would receive a warning and after the third warning he would be sent back to Mexico. SMF 139.4. And Plaintiff Fernando Mendez Franco contends that Anna Guerrero, a human resources manager, pressured him. SMF 172.2. These individuals are not owners, partners, managers, or corporate officers.

Anna Guerrero was never a Stemilt human resources "manager" and Plaintiffs' foundationless speculation does not make her one; she was a staff worker proving HR Support. Williams Decl. ¶ 3. Neither Victor Silva and "Carlos", two alleged crew bosses, nor Ms. Guerrero, had the authority to hire or fire workers, or otherwise bind Stemilt to their conduct. This provides another, independent basis to dismiss these Plaintiffs' breach of contract constructive discharge allegations.

---

[7] Plaintiff Octavio Gomez Garcia testified that his crew boss "Carlos" threatened him. SMF 139. Stemilt does not have any records of a crew boss named Carlos assigned to JVO in 2017. SMF 140.

STEMILT'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 51
052556.008 \ 103483716v6

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

## II. CONCLUSION

For the reasons articulated above, Stemilt respectfully requests that the federal human trafficking and "alienage" discrimination claims be dismissed. Of the remaining eight state law breach of contract claims, Stemilt submits that six Plaintiffs fail to demonstrate that Stemilt materially breached its contractual duties to them, or that they suffered proximate damages from such breach, or that they were constructively discharged as a result of such breach. Stemilt accordingly requests that the six breach of contract claims be similarly dismissed.

DATED this 1st day of August, 2023.

By:  */s/ Brendan V. Monahan*
      Brendan Monahan (WSBA #22315)
      Justo González (WSBA #39127)
      Derek Red Arrow Frank (WSBA #55090)
      Arianah Musser (WSBA #57512)
      120 N. Naches Avenue
      Yakima, WA  98901-2757
      Phone:  509-853-3000
      Facsimile:  509-895-0060
      Brendan.Monahan@stokeslaw.com
      Justo.Gonzalez@stokeslaw.com
      Lance.Pelletier@stokeslaw.com
      Derek.Redarrow@stokeslaw.com
      arianah.musser@stokeslaw.com
      **Attorneys for Defendant Stemilt Ag Services, LLC**

DAVIS WRIGHT TREMAINE, LLP


By:  */s/ Lance A. Pelletier*
Lance A. Pelletier (WSBA #49030)
920 Fifth Avenue, S-1610
Seattle, WA 98104-1610
Phone: (206) 622-3150
Facsimile: (206) 757-7700
lancepelleter@dwt.com
Attorneys for Defendant Stemilt Ag
Services, LLC

STOKES LAWRENCE
VELIKANJE MOORE & SHORE
120 N. NACHES AVENUE
YAKIMA, WASHINGTON 98901-2757
(509) 853-3000

1

## **<u>CERTIFICATE OF SERVICE</u>**

2       I hereby certify that on August 1, 2023 I electronically filed the foregoing with

3   the Clerk of the Court using the CM/ECF system, which in turn automatically

4   generated a Notice of Electronic Filing (NEF) to all parties in the case who are

5   registered users of the CM/ECF system.  The NEF for the foregoing specifically

6   identifies recipients of electronic notice.  I hereby certify that I have mailed by

7   United States Postal Service the document to the following non-EM/ECF

8   participants:

9

10      By:*/s/ Brendan V. Monahan*
         Brendan Monahan (WSBA #22315)
11       120 N. Naches Avenue
         Yakima, WA  98901-2757
12       Phone:  509-853-3000
         Facsimile:  509-895-0060
13       Brendan.Monahan@stokeslaw.com

14

15

16

17

18

19

20

21   STEMILT'S MOTION FOR PARTIAL SUMMARY
     JUDGMENT - 54
     052556.008 \ 103483716v6